**Bill LAWHORN, JR., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 3–91–106–CR.**

Court of Appeals of Texas, Austin.

Dec. 9, 1992.

Rehearing Overruled Jan. 20, 1993.

Michael R. Maguire, Austin, for appellant.

Ronald Earle, Dist. Atty., Robert Smith, Asst. Dist. Atty., Austin, for appellee.

Before POWERS, JONES and KIDD, JJ.

JONES, Justice.

A jury found Bill Lawhorn, appellant, guilty of burglary of a habitation with intent to commit felony escape; the jury assessed punishment, enhanced by a previous felony conviction, at imprisonment for thirty years. Tex.Penal Code Ann. § 30.02 (West 1989). On appeal, appellant challenges the legal sufficiency of the evidence to support the conviction. We will reverse the conviction and order an acquittal.

Appellant was arrested for aggravated sexual assault on December 22, 1989. About a month after his arrest for that offense, Travis County Sheriff's Deputy Julie Waddle was assigned to transport

appellant, along with one other inmate, from the City of Austin jail to the Travis County jail. As they arrived at the county jail in a Sheriff's Department van at approximately 9:30 p.m., appellant, in handcuffs, fled on foot. Deputy Waddle pulled her gun and ordered appellant to stop, but decided not to shoot. She chased him a short distance while radioing for assistance, but she soon lost sight of him and gave up the chase. Confident that other officers would look for appellant, Deputy Waddle returned to her van to finish transporting the other prisoner and had no significant role in appellant's subsequent apprehension.

About a block from the county jail, appellant ran past a car driven by an off-duty sheriff's deputy, Lieutenant Hal Caldwell. From the jail uniform and handcuffs, Caldwell recognized appellant as an escaped inmate. Caldwell followed appellant in his car for about half a block until appellant ran into the courtyard of the Regency Apartments, where Caldwell both lived and worked as a security guard. Caldwell pulled his gun and ordered appellant to stop, but he, like Deputy Waddle, decided not to shoot. Caldwell then ran up the sidewalk on the *outside* of the complex and took a position on the San Antonio Street side of the complex, waiting to see if appellant would scale the six-foot fence on that side. About that time, Caldwell heard the sound of breaking glass inside the complex. Caldwell waited there, but appellant did not come over the fence. A short time later, three or four jail officers arrived, and Caldwell positioned them around the perimeter of the apartment complex. Shortly after that, officers from the Austin Police Department began to arrive. Within a matter of minutes, appellant was found lying on the kitchen floor in apartment 114, which he had entered by breaking a window. The entire episode lasted only twenty or twenty-five minutes. Mary Savala, the occupant of the apartment, testified that she did not give appellant consent to enter her apartment.

A person commits an offense if he escapes from custody when he is under arrest. Tex.Penal Code Ann. § 38.07(a)(1) (West 1989). The offense is a felony if the offense for which he is under arrest is a felony. *Id.* § 38.07(c)(1). "Custody" means detained or under arrest by a peace officer; "escape" means unauthorized departure from custody. Tex.Penal Code Ann. § 38.01(2), (3) (West Supp.1992).

In the present case, the trial court charged the jury that, to convict appellant of burglary, they were required to find beyond a reasonable doubt that he "intentionally or knowingly enter[ed] a habitation without the effective consent of Mary Savala, the owner, with intent to commit the felony of escape from custody, in that the said defendant had been arrested for a felony, to wit: aggravated sexual assault." The charge also included this instruction:

> Now if you believe from the evidence that the Defendant on the occasion in question had already committed the offense of felony escape before he entered the habitation of Mary Zavala [sic], if he did, or if you have a reasonable doubt thereof you can not convict the Defendant of Burglary of a Habitation with intent to commit felony escape, but you will consider whether the Defendant is guilty of Felony Escape.

In his first point of error, appellant contends the State failed to prove that he entered Savala's apartment with the requisite intent. We agree.

Appellant left Deputy Waddle's custody when he ran from the van or, at the very latest, when Waddle gave up the chase and returned to the van containing her other prisoner. *See Casey v. State*, 681 S.W.2d 178 (Tex.App.—Houston [14th Dist.] 1984, pet. ref'd). The offense was complete at that point. The Court of Criminal Appeals has noted that escape is not a continuing offense. *Fitzgerald v. State*, 782 S.W.2d 876, 881 n. 9 (Tex.Crim.App.1990). Thus, appellant could not still have been in the process of escaping when he broke into Savala's apartment and, as a matter of law, he could not have "intended" to commit the offense of escape when he entered the apartment. Appellant may have entered the apartment with the intent to resist or

evade arrest, Tex.Penal Code Ann. §§ 38.-03, .04 (West 1989 & Supp.1992), but the evidence is conclusive that he did not commit the offense of burglary with intent to commit felony escape, because he had already completed the offense of escape.

For example, the present case contains far stronger evidence of a completed escape than in *Scott v. State*, 672 S.W.2d 465 (Tex.Crim.App.1984), in which a conviction for escape was affirmed. In *Scott*, Taylor County jail authorities set up a surveillance as a result of having been informed of a planned escape from the jail. At the predicted time, the defendant emerged from a hole he had dug through or under one of the walls of the jail building. The defendant's passage through the hole placed him in a fenced, but unlocked, yard area within the jail facilities, where he was promptly arrested by the heedful authorities. The defendant contended that he had never departed from custody and, therefore, had not completed his escape. The court rejected this argument:

> [W]hile the yard was part of the Taylor County jail facilities, inmates were not allowed to leave the building at any time unless accompanied by a deputy. The fenced yard was not part of a trustee's assigned area. *Appellant completed the offense of escape when he dug out of the building.* The walls of the jail building itself were the bounds of appellant's detention and custody. Once he violated this boundary appellant was no longer in the custody of the sheriff's office even though he was under surveillance by a deputy.

672 S.W.2d at 466 (emphasis added); *see also* Annotation, *Conviction for Escape Where Prisoner Fails to Leave Confines of Prison or Institution*, 79 A.L.R.4th 1060 (1991).

■ It is certainly true that "actual, physical 'hands-on' restraint is not a prerequisite to a showing of custody in the context of the offense of escape." *Harrell v. State*, 743 S.W.2d 229, 231 (Tex.Crim. App.1987); *accord Gilbert v. State*, 787 S.W.2d 233, 236 (Tex.App.—Fort Worth 1990, no pet.). The term "custody" clearly implies, however, a degree of physical limitation, restraint, or control; if it meant merely a legal "right" to control, as the dissent seems to argue, then there could *never* be an escape from custody.

The *nature* and *scope* of the physical limitation of custody depends on the facts of each case:

> What constitutes a departure from custody, within the meaning of this rule, depends on the circumstances of the particular confinement. Thus, a prisoner may be guilty of an actual departure, and escape, merely by leaving his cell, or some other area, or by going outside the prison walls, even though he does not leave prison property, or by leaving his jail through an unlocked door.

30A C.J.S. *Escape* § 5(b), at 403 (1992). Thus, the inmate in *Scott* was physically confined to the walls of the prison building; such a tangible barrier generally provides an easy definition of the physical limits of a prisoner's custody. *Cf. Fitzgerald*, 782 S.W.2d at 879 ("Appellant ... committed the felony offense of escape by moving beyond bounds of Beto II Unit without authority and his offense was complete at that point.... In every statutory sense, then, the moment he was outside confines of the penitentiary his escape was a *fait accompli*.").

In other circumstances, the line of demarcation is less clear, but the existence of *some* physical limitation is no less real. In *Harrell*, for example, the defendant was convicted of escape for leaving the V.A. hospital where, after his arrest, he had been left unguarded. It is not clear whether the physical limitation of the defendant's custody confined him to his hospital room, or to the entire floor that his room was on, or perhaps to all of the hospital grounds. What is obvious, however, is that there was some physical limit beyond which he was not permitted to go. The court in *Harrell* did not need to address the precise scope of the physical limitation of his custody, because the prisoner had fled beyond the furthest conceivable limit. *Cf. Webb v. State*, 533 S.W.2d 780, 787–88 (Tex.Crim. App.1976) (defendant who was assigned to

paint offices in county courthouse climbed out sixth-story window and was found with broken leg on third-story roof); *Casey*, 681 S.W.2d at 180–81 (defendant who fled courtroom after judge ordered him taken into custody was apprehended twenty feet outside courtroom door).

Likewise, in the present case, there was no clearly defined boundary of appellant's custody while Deputy Waddle was escorting him from the Sheriff's Department van to the county jail. We do not need, however, to determine at what precise point appellant's departure from Deputy Waddle's custody was complete. Appellant fled beyond her reach, out of her sight, and even beyond her pursuit; he fled off county property, over public streets, and into a private apartment complex. As in *Harrell*, whatever the furthest extent of the physical limit of appellant's custody might have been, he had clearly exceeded it by the time he broke into Savala's apartment.

This inescapable conclusion is supported not only by the undisputed facts, but also by direct admissions of the State's witnesses themselves. Deputy Waddle testified as follows:

Q: I believe that you testified that you opened the sliding door of this van.

A: Yes, I did.

Q: And that Mr. Lawhorn got out and started walking towards, I suppose, where he was supposed to go.

A: He started.

Q: And then he broke and ran?

A: Yes, he did.

Q: And at that point did he leave your custody?

A: Yes, he did.

Q: There's no doubt in your mind about that?

A: No, there is not.

Q: And the only time that he reentered your custody was when?

A: Was when he was later apprehended inside the lady's apartment, Apartment 114. Then that's when I went in and we took him back to the jail.

Q: So it is your testimony that Mr. Lawhorn had indeed escaped from you. Is that correct?

A: Yes, sir.

Q: There's no doubt about that, is there?

A: No.

Caldwell testified as follows:

Q: Mr. Caldwell, when you first saw Bill Lawhorn, the person later found to be Bill Lawhorn, running, was he in custody or out of custody?

A: I would say that he was out of custody.

The difficulty in this case, it seems to us, is that there is a *lay* meaning of the term "escape" that is much broader and less exact than the *legal* definition of the offense. Under the lay meaning, a fleeing prisoner might not be considered to have truly "escaped" until he had successfully eluded his pursuers for some indeterminate period of time. Until then, under the lay interpretation, the prisoner would still be in the process of escaping. Thus, under this definition, anything a fugitive did during this indeterminate "escaping" period in an effort to "get away" could be said to have been done with the intent of completing his escape.

The *offense of escape*, on the other hand, is defined more precisely: an unauthorized departure from custody. As is obvious from the cases discussed above, the offense of escape may, as a legal proposition, be completed long before the fleeing prisoner has successfully "gotten away," in laymen's terms.

In the context of the present case, appellant has committed the offense of "burglary" only if he unlawfully entered Savala's apartment with intent to commit a felony offense—specifically, the felony offense of escape. Tex.Penal Code Ann. § 30.02(a)(1) (West 1989). In reviewing appellant's conviction, therefore, we have focused on the legal meaning of "escape," not the lay meaning.

We hold that the facts in this cause establish conclusively that appellant had completed a departure from custody *before* he entered Savala's apartment; accordingly, that issue was not a question of fact for the jury. Given the particular facts of this

cause, even viewing the evidence in the light most favorable to the verdict, a rational trier of fact could not have found beyond a reasonable doubt that appellant's departure from custody was not yet complete when he broke into Savala's apartment and that he entered the apartment with the intent to commit the offense of escape. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Griffin v. State*, 614 S.W.2d 155 (Tex.Crim. App.1981). Appellant's first point of error is sustained. Because we sustain point of error one, we do not reach appellant's second point of error.

We reverse appellant's conviction and reform the judgment to reflect an acquittal.

POWERS, Justice, dissenting.

I disagree with the majority's reasoning and judgment for the following reasons.

## I.

Lawhorn contends in his first point of error that the trial court erred in overruling his motion for instructed verdict. The motion rested on Lawhorn's claim that the evidence was insufficient to permit a rational jury to find, beyond a reasonable doubt, that he intended to escape when he entered the apartment. The majority have detailed the evidence, and I need not repeat it here. Suffice it to say that the evidence showed that Lawhorn broke free from the deputy sheriff's detention and fled to an apartment complex a block or so away where he entered an apartment by force. There he was found by pursuing peace officers within a few minutes.

The penal code provides that one "commits an offense if he *escapes from custody* when he is ... under arrest for, charged with, or convicted of an offense." Tex.Penal Code Ann. § 38.07(a)(1) (West 1989) (emphasis added). "Custody" means detention under arrest by a peace officer or restraint by a public servant pursuant to a court order. *Id.* § 38.01(2). "Escape" means an "unauthorized departure from custody or failure to return to custody fol-

lowing temporary leave for a specific purpose or limited period, but does not include a violation of conditions of probation or parole." *Id.* § 38.01(3).

The majority opinion sustains Lawhorn's claim that a rational jury could not find the elements of the escape offense beyond a reasonable doubt. The opinion rests on the following rationale:

1. As a matter of law, some form and degree of existing physical restraint is essential before one can be in a "custody" status as contemplated by the escape offense;

2. Lawhorn's custody status therefore *ended*, under the undisputed evidence, the moment his flight removed him from the deputy sheriff's physical restraint;

3. Lawhorn's *intent* to escape from custody *expired at the same moment*, as a matter of law, because (a) there no longer existed a "custody" status from which to escape and (b) the legal fiction of a "continuing offense" was unavailable to carry forward his original intent to escape; therefore,

4. No rational jury could have found from the evidence that Lawhorn had the requisite intent to escape from custody when he entered the apartment.

In my view the applicable law will not sustain such a course of reasoning, which rests ultimately on the false assumption that a prisoner may end his custody status, in the escape context, merely by his unauthorized but successful flight from physical detention.

The general rule is that "custody" encompasses both a person's *legal* status and his *physical* status as a prisoner. The two coincide when an offender is arrested and first becomes a prisoner. At that time, he comes under the legal as well as the physical restraint incident to his arrest. "Custody terminates, i.e., imprisonment ends, *when the prisoner is lawfully discharged*. The crime of escape ... may be committed at any time during the interval." 4 Charles E. Torcia, *Wharton's Criminal Law* § 670, at 438 (14th ed., 1981) (emphasis added).[1]

---

1. During the interval between arrest and lawful

discharge, a prisoner's legal status as a person

The majority deny this general rule. Without citation to authority, they conclude that custody may be terminated in yet another way—by the prisoner's successful escape from detention in the interval between his arrest and lawful discharge.

It appears to me that the majority reach this extraordinary result based upon a mistaken understanding of decisions that refer to an escape being "completed" or "ended" when a prisoner transgresses a physical barrier or boundary set upon his movements by those having custodial authority over him. *See, e.g., Fitzgerald v. State,* 782 S.W.2d 876, 880 (Tex.Crim.App.1990) ("[A]ppellant's unauthorized departure from custody ... ended when he went through a hole cut in the fenced boundary."); *Scott v. State,* 672 S.W.2d 465, 466 (Tex.Crim.App.1984) ("Appellant completed the offense of escape when he dug out of the building."). These statements mean simply that the prisoner had physically accomplished the departure from custody necessary for the escape offense; they do not state or imply that the custody status imposed by law was terminated, just as it would be with the prisoner's *lawful* discharge from custody. That is to say, these cases do not imply as much *unless* one *arbitrarily* assigns to the word "custody" a *single* meaning—that "custody" encompasses *only* the physical restraint that may be associated at the time with the prisoner's custody status. This is what the majority do,̈ but there is no authority for it. Indeed the controlling authority is to the contrary.

The court of criminal appeals rejected the majority's theory in *Harrell v. State,* 743 S.W.2d 229 (Tex.Crim.App.1987), based on the distinction between a prisoner's *legal* status and his *physical* status as a person in custody. The opinion justifies a brief analysis.

Harrell was indicted for theft, arrested, and jailed. County officials removed him from jail before trial, for illness, and placed him in a public hospital governed by federal regulations. These forbade the guarding of patients. Hospital employees agreed, however, to watch Harrell and report to the county officials if his medical condition changed or he attempted to escape. Harrell fled the hospital to be captured eventually in Florida. He was returned to the county. There he was tried and convicted of escape under section 38.07 of the penal code. Harrell appealed, raising the identical point of error and theory raised by Lawhorn—that the trial court erred in overruling his motion for directed verdict because the undisputed evidence showed he was "not under restraint" and therefore not in a "custody" status when he departed from the hospital. The court of appeals agreed with the theory and reversed the trial-court judgment, rendering judgment dismissing the prosecution. *Harrell v. State,* 699 S.W.2d 319, 320 (Tex. App.—San Antonio 1985); *Harrell,* 743 S.W.2d at 230 ("The Court of Appeals, in finding the evidence insufficient to show custody, focused on the fact that appellant was not under any kind of *physical* restraint while at the V.A. Hospital.").

The court of criminal appeals reversed the judgment of the court of appeals, holding "that actual, physical 'hands-on' restraint is *not* a prerequisite to a showing of custody in the context of the offense of escape. Rather it is appropriate to look at the *legal status* of the individual at the time of the escape." *Harrell,* 743 S.W.2d at 231 (emphasis added). Equally pertinent

in custody never changes. His physical status may change, however, even to the extent of physical liberty subject only to incorporeal conditions imposed by his custodian. These conditions may only impose, for example, chronological or geographical limits on the prisoner's liberty. *Wharton's* refers to the prisoner's status, in such cases, as "constructive custody." 4 Torcia, *supra,* at 431. *See, e.g., Choice v. State,* 819 S.W.2d 864 (Tex.Crim.App.1991) (prisoner authorized to live at home under specified conditions); *Martin v. State,* 654 S.W.2d 473 (Tex.

App.—Waco 1982); *rev'd on other grounds,* 652 S.W.2d 777 (Tex.Crim.App.1983) (work release); *see also* Annotation, *Failure of Prisoner to Return at Expiration of Work Furlough or Other Permissive Release Period as Crime of Escape,* 76 A.L.R.3d 659 (1977); Thomas Trenkner, Annotation, *Escape from Public Employee or Institution Other than Correctional or Law Enforcement Employee or Institution as Criminal Offense,* 69 A.L.R.3d 625 (1976). If the prisoner breaks a condition of his liberty status, he may be convicted of escape. *Id.*

to the majority's rationale here is the rationale given by the *Harrell* court in support of his holding: Harrell *remained* "under arrest" after his transfer to the hospital, even in the absence of physical restraint, and his custody status continued *regardless of his physical location* until the theft charges were "finally resolved" or he was released on bond. *Id.*[2]

Nothing could be plainer. The word "custody" as used in section 38.07 of the penal code encompasses both the prisoner's physical status and his legal status. His physical status may change—he may be freed from physical restraint or he may gain complete physical liberty; but this does not terminate his legal status as a person in custody. He remains in that legal status until his lawful discharge, and his legal status may serve as a basis for prosecution and conviction for the escape offense set out in section 38.07 of the penal code.

The majority opinion concedes the holding of *Harrell* but does not address the precepts upon which it is based: that a prisoner's unauthorized departure from detention does not terminate his legal status of a person in custody, which status remains as a basis for prosecution and conviction under section 38.07 of the penal code; and custody terminates only with a final resolution of the underlying charges or a release on bond.

What I have said above makes it unnecessary to address at length the third element of the majority's rationale—their idea that Lawhorn's *intent to escape from custody expired,* as a matter of law, at the moment his flight placed him beyond the deputy sheriff's physical restraint. Without this idea, the majority could not hold as they do—that a rational jury could not find from the evidence that Lawhorn entered the apartment with a specific *intent to escape.*

This third element of the majority's rationale is based first on the assumption that the word "custody" has only one meaning—that it refers exclusively to a prisoner's physical restraint or limitation. This is erroneous for the reasons given above. I refer particularly to the *Harrell* decision.

Secondly, the majority base their rationale on the idea that escape is not a continuing offense. I believe this idea to be erroneous as well, but the matter is immaterial in the present case and I will not discuss it.[3] It is immaterial because Lawhorn was shown by the evidence to have departed from custody only a few minutes before he entered the apartment by force. It cannot be said as a matter of law, given that short interval, that a jury is irrational if it finds Lawhorn entered the apartment with a specific intent to escape from the pursuing officers.[4]

2. As authority, the *Harrell* court referred to the statutes dealing with discharge of a prisoner after an acquittal verdict or after serving the period of punishment imposed, Tex.Code Crim. Proc.Ann. art. 37.12 (West 1981), art. 43.13 (West 1979), and to the statutes concerning release on bond, *id.,* arts. 17.21, 17.27, 17.29 (West 1977). When a prisoner is released on bond, he is discharged from the legal status of custody because bail jumping is a separate and independent offense under § 38.11 of the penal code.

3. The opinion in *Fitzgerald v. State,* 782 S.W.2d 876, 881 n. 9 (Tex.Crim.App.1990), does not hold that escape is not a continuing offense. Nor does any other decision so far as I am able to determine. *Fitzgerald* simply stated in footnote nine that a prisoner's breaking through a fence "does not extend the criminal episode *for purposes of admitting extraneous offenses*" in evidence. *Fitzgerald,* 782 S.W.2d at 881 n. 9 (emphasis added). Ordinarily, of course, the legal

fiction of a continuing offense is a device used to avoid the bar of a prior conviction or prior acquittal. *Fitzgerald* employed the device to bar introduction of evidence of other offenses which the State contended fell within the res gestae of the escape offense. The majority employ the device in a far different manner—to *terminate* Lawhorn's legal status as a person in custody. There is no authority for this usage.

4. We do not deal here with a case where a long interval came between the prisoner's successful escape and his entry of an apartment. In such a case, the circumstances surrounding the entry may or may not permit a rational jury to find beyond a reasonable doubt that the accused entered the apartment with an intent to escape. For example, the intent to escape might be more difficult to infer a year after the escape when the evidence shows no more than the entry itself; on the other hand if other evidence shows that the accused reacted to the presence of police officers by making the forced entry,

For the reasons given, I would overrule Lawhorn's first point of error.

## II.

In his second point of error, Lawhorn contends the trial court erroneously refused two specially requested instructions. One would have instructed that the jury "must find that the defendant entered the habitation ... with the intent to commit theft or a felony *other* than escape before" the jury might find him guilty of burglary. (emphasis added). Lawhorn gives no authority for the proposition that a conviction for burglary cannot be based on an unauthorized entry with intent to commit felony escape. Moreover, his requested instruction implicitly authorized his conviction on a theory not alleged in the indictment.

The other requested instruction would have instructed the jury "that the offense of felony escape is not a continuing one, but is complete at the moment of the unauthorized departure from custody after the defendant has been placed under arrest for, charged with, or convicted of a felony offense." Even if one assumes this was a correct statement of the law, the requested instruction was nevertheless merely a restatement of what the court *did* instruct the jury—that they could not convict Lawhorn of burglary if they found that he had already committed the offense of escape before entering the apartment.

I would, therefore, overrule Lawhorn's second point of error.

Finding no error, I would affirm the judgment.

then the logical impediment arising from the long lapse of time is discounted a great deal.