**Bill LAWHORN, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 225–93.**

Court of Criminal Appeals of Texas, En Banc.

April 5, 1995.

---

Michael R. Maguire, Austin, for appellant.

Ronald Earle, Dist. Atty., Robert Smith, Asst. Dist. Atty., Austin, and Robert Huttash, State's Atty., and Jeffrey L. Van Horn, Asst. State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITIONS FOR DISCRETIONARY REVIEW

MALONEY, Judge.

Appellant was convicted by a jury of burglary and sentenced to 30 years imprison-

ment. The Third Court of Appeals reversed and reformed the judgment to reflect an acquittal, holding the evidence insufficient. *Lawhorn v. State*, 843 S.W.2d 268 (Tex. App.—Austin 1992). We granted the State's petitions for discretionary review to determine whether the Court of Appeals erred in its sufficiency analysis.[1]

The Court of Appeals adequately set forth the relevant facts which we adopt verbatim as follows:

Appellant was arrested for aggravated sexual assault on December 22, 1989. About a month after his arrest for that offense, Travis County Sheriff's Deputy Julie Waddle was assigned to transport appellant, along with one other inmate, from the City of Austin jail to the Travis County jail. As they arrived at the county jail in a Sheriff's Department van at approximately 9:30 p.m., appellant, in handcuffs, fled on foot. Deputy Waddle pulled her gun and ordered appellant to stop, but decided not to shoot. She chased him a short distance while radioing for assistance, but she soon lost sight of him and gave up the chase. Confident that other officers would look for appellant, Deputy Waddle returned to her van to finish transporting the other prisoner and had no significant role in appellant's subsequent apprehension.

About a block from the county jail, appellant ran past a car driven by an off-duty sheriff's deputy, Lieutenant Hal Caldwell. From the jail uniform and handcuffs, Caldwell recognized appellant as an escaped inmate. Caldwell followed appellant in his

1. The District Attorney of Travis County and the State Prosecuting Attorney both filed petitions for discretionary review in this case. The following grounds of the District Attorney's petition were granted:
 1. When a fleeing inmate is hotly pursued by law enforcement agents, at what point does his conduct constitute a completed escape as a matter of law?
 2. In the instant case, a burglary prosecution with escape as the intended predicate felony, did appellant's conduct prior to entry constitute a completed escape thereby precluding a burglary conviction?

The following grounds of the State Prosecuting Attorney's petition were granted:
1. Does the common law defense of "impossibility" apply to the "intent to commit a felony" prong of the burglary statute?
2. Is there a certain level or amount of evidence which requires an affirmative finding by the jury, beyond a reasonable doubt, as to a particular matter of fact?

For purposes of convenience, in referring to "the State" we will not distinguish between the District Attorney and the State Prosecuting Attorney.

car for about half a block until appellant ran into the courtyard of the Regency Apartments, where Caldwell both lived and worked as a security guard. Caldwell pulled his gun and ordered appellant to stop, but he, like Deputy Waddle, decided not to shoot. Caldwell then ran up the sidewalk on the *outside* of the complex and took a position on the San Antonio Street side of the complex, waiting to see if appellant would scale the six-foot fence on that side. About that time, Caldwell heard the sound of breaking glass inside the complex. Caldwell waited there, but appellant did not come over the fence. A short time later, three or four jail officers arrived, and Caldwell positioned them around the perimeter of the apartment complex. Shortly after that, officers from the Austin Police Department began to arrive. Within a matter of minutes, appellant was found lying on the kitchen floor in apartment 114, which he had entered by breaking a window. The entire episode lasted only twenty or twenty-five minutes. Mary Savala, the occupant of the apartment, testified that she did not give appellant consent to enter her apartment.

*Id.* at 269.

The jury was instructed that in order to find appellant guilty of the offense of burglary of a habitation with intent to commit felony escape, they must find that appellant "intentionally or knowingly enter[ed] a habitation with intent to commit the felony escape from custody." They were further instructed that:

if you believe from the evidence that [appellant] had already committed the offense of felony escape before he entered the habitation ... or if you have a reasonable doubt thereof you can not convict [appellant] of Burglary of a Habitation with intent to commit felony escape....

Addressing the sufficiency of the evidence to support appellant's conviction for burglary (unlawful entry with intent to commit felony escape), the Court of Appeals concluded that, as a matter of law, appellant could not have

intended to commit the offense of escape when he entered the apartment:

Appellant left Deputy Waddle's custody when he ran from the van, or at the very latest, when Waddle gave up the chase and returned to the van containing her other prisoner.... The offense was complete at that point. The Court of Criminal Appeals has noted that escape is not a continuing offense. *Fitzgerald v. State*, 782 S.W.2d 876, 881 n. 9 (Tex.Crim.App.1990). Thus, appellant could not still have been in the process of escaping when he broke into Savala's apartment and, as a matter of law, he could not have "intended" to commit the offense of escape when he entered the apartment. Appellant may have entered the apartment with the intent to resist or evade arrest, ... but the evidence is conclusive that he did not commit the offense of burglary with intent to commit felony escape, because he had already completed the offense of escape.

*Id.* at 269–70.

The State contends the Court of Appeals erred in concluding as a matter of law that the offense of escape was completed before appellant entered the apartment. The State reasons that whether the escape was completed or was still continuing is a fact question for the jury and was properly submitted as an issue of fact for the jury to decide. The State also contends that the holding in *Fitzgerald*, relied upon by the Court of Appeals, is not applicable to this case. Appellant counters that *Fitzgerald* is controlling and that thereunder, the escape was complete as a matter of law long before appellant entered the apartment.

## I. Escape

 At the time of the offense, § 38.07 of the Penal Code, *Escape*, provided that a person committed an offense "if he escapes from custody" when he is either "under arrest for, charged with, or convicted of an offense" or "in custody pursuant to a lawful order of a court." Further, "escape" is defined in part as "unauthorized departure

from custody" and "custody" is defined as "detained or under arrest by a peace officer or under restraint by a public servant pursuant to an order of a court." *Id.* at § 38.01(2), (3). Accordingly, it is an element of the offense of escape that the defendant is in custody prior to the offense. It is also an element of the offense that the defendant depart from custody without permission. While the State urges that we view escape as a "continuing" offense, the language of the statute precludes such a construction. In the instant context the phrase "departure from custody" denotes the act of leaving a state of detention or restraint by a peace officer and once the act is done the escape is accomplished. The Legislature did not include as an element of the offense of escape the notions of flight thereafter and/or continued evasion of arrest.

■ This interpretation is consistent with our opinion in *Fitzgerald,* where the defendant and another inmate escaped confinement in the Beto II Unit of the Department of Corrections by cutting their way through a perimeter fence:

> Thus Appellant with his cohorts committed the felony offense of escape by moving beyond the bounds of the Beto II Unit without authority, and his offense was complete at that point.... In every statutory sense, then, the moment he was outside the confines of the penitentiary his escape was *fait accompli.*

*Fitzgerald,* 782 S.W.2d at 879. As such, in *Fitzgerald,* we held that extraneous offenses committed during the twelve hours the de-

fendant was at large following his escape from the Beto II Unit were not admissible to show the "context" of the offense of escape. *Id.* at 881. We further held that the extraneous offenses were not relevant to the issue of the defendant's guilt for the offense of escape. While flight after the commission of a crime is sometimes probative of guilt, we pointed out that "flight is not an essential element of the offense of escape because the offense is complete when an unauthorized departure from custody is made." *Id.* We explained:

> An escapee rarely lingers outside the place he has escaped; most likely one will flee away to avoid being captured and returned to the very custody from which he has just escaped. That he moves out and runs does not enhance his "consciousness of guilt" for having escaped in the first place.

*Id.* at 882.[2]

■ Accordingly, we hold the Court of Appeals did not err in concluding that "Appellant left Deputy Waddle's custody when he ran from the van, or at the very latest, when Waddle gave up the chase and returned to the van containing her other prisoner." *Lawhorn,* 843 S.W.2d at 269. Therefore, the offense of escape was complete as a matter of law prior to appellant's entry into the apartment.[3]

## II. Impossibility

The Court of Appeals further concluded that since the offense of escape was complete before appellant entered the apartment, he could not as a matter of law, have "intended"

---

**2.** The State contends that our construction of the escape provision in *Fitzgerald* is not controlling because that case "involv[ed] certain specific policy considerations, unrelated to the case at bar." We decline to construe the elements of an offense under the Penal Code differently depending upon the policy considerations and factual context of any given case. Such a practice would lead to uncertainty and inconsistency in the criminal law and is contrary to our plain language approach of construing statutes. *See Boykin v. State,* 818 S.W.2d 782 (Tex.Crim.App.1991).

**3.** Although the question of when the escape was complete was submitted to the jury as a question

of fact, it should have been submitted as a matter of law. Given that as a matter of law, escape was complete prior to appellant's entry into the apartment, the Court of Appeals correctly concluded that "a rational trier of fact could not have found beyond a reasonable doubt that appellant's departure from custody was not yet complete when he broke into [the] apartment...." *Cf. Deltenre v. State,* 808 S.W.2d 97 (Tex.Crim.App.1991) (holding evidence insufficient to prove escape from "peace officer" based upon legal definition of "peace officer", even though instruction stated that person from whom defendant escaped was a "peace officer").

to commit the offense of escape when he entered the apartment. *Id.* They reasoned that appellant "may have entered the apartment with the intent to resist or evade arrest, ... but the evidence is conclusive that he did not commit the offense of burglary with intent to commit felony escape, because he had already completed the offense of escape." *Id.* The State argues that the defense of impossibility does not apply to the intended offense in a burglary. They reason that the gist of the offense is intent and so long as intent is present at the time of the entry, the offense is complete regardless of whether the intended offense could have been executed.

■ In concluding that impossibility does not apply to the intended offense of burglary, the State fails to distinguish between legal and factual impossibility. The doctrine of impossibility has been labeled by scholars, judges and commentators alike as one of the most evasive issues in the criminal law. Impossibility is commonly categorized as either factual or legal. Usually applied in the context of attempt crimes, the former is not held to be a defense, while the latter has been viewed as a valid defense. ROLLIN M. PERKINS, RONALD N. BOYCE, CRIMINAL LAW 632 (3rd ed. 1981); CHARLES E. TORTIA, IV WHARTON'S CRIMINAL LAW § 747, at 578 (14th ed. 1981). Factual impossibility is generally regarded as existing where, due to a physical or factual condition unknown to the actor, the attempted crime could not be completed. Often cited examples of factual impossibility include the attempt to pick an empty pocket, attempt to kill with an unloaded or defective weapon, attempt to kill with poison that was not capable of producing death, attempt to steal from an empty house, attempt to conduct an abortion on a woman who was not pregnant. WAYNE R. LAFAVE, AUSTIN W. SCOTT, 2 SUBSTANTIVE CRIMINAL LAW § 6.3, at 42 (1986); PAUL H. ROBINSON, 1 CRIMINAL LAW DEFENSES § 85(c), at 425 (1984 and Supp.1993).

■ Legal impossibility has been described as existing where the act if completed would not be a crime, although what the actor intends to accomplish would be a crime.[4] JEROME HALL, GENERAL PRINCIPLES OF CRIMINAL LAW 586 (2nd ed. 1960). Cited examples of legal impossibility include attempt to receive stolen property that was not stolen, attempt to murder a corpse, attempt of a minor to commit rape, attempt to bribe a public official for purposes of securing a particular vote when the official had no authority to vote on the matter, attempt to bribe a person believed to be a juror when that person is not actually a juror. *Id.* at 595; WAYNE R. LAFAVE, AUSTIN W. SCOTT, 2 SUBSTANTIVE CRIMINAL LAW § 6.3, at 46 (1986); CHARLES E. TORTIA, IV WHARTON'S CRIMINAL LAW § 747, at 581 (14th ed. 1981). Legal impossibility has also been described as existing where what the actor intends to do would not constitute a crime, or at least the crime charged.[5] *See, e.g.,* WAYNE R. LAFAVE, AUSTIN W. SCOTT, 2 SUBSTANTIVE CRIMINAL LAW § 6.3, at 39–40, 44–47 (1986); CHARLES PERKINS, RONALD BOYCE, CRIMINAL LAW 634 (3rd ed. 1982); CHARLES E. TORTIA, IV WHARTON'S CRIMINAL LAW § 747, at 578 (14th ed. 1981). One commentator has explained the distinction between legal impossibility and factual impossibility:

(1) unless the intended end is a legally proscribed harm, causing it is not criminal,

---

4. One of the most famous of the legal impossibility cases is *People v. Jaffe*, 185 N.Y. 497, 78 N.E. 169 (1906). There, the court held that the defendant could not be guilty of attempting to receive stolen goods because the goods were not in fact stolen. The court reasoned that if the defendant had done everything he attempted to do, he would not have committed a crime.

5. An example of this principle is demonstrated in *United States v. McInnis*, 601 F.2d 1319, 1322–27

(5th Cir.1979), *cert. denied,* 445 U.S. 962, 100 S.Ct. 1649, 64 L.Ed.2d 237 (1980). There, the defendants were charged with conspiracy to kidnap under the federal anti-kidnapping statute. The statute made it an offense to transport in interstate or foreign commerce a victim *who has been kidnapped.* However, the defendants' plan was to lure their victim across the Mexican border and *then* kidnap him. What the defendants conspired to do was not a crime under the charged federal statute.

hence any conduct falling short of that is not a criminal attempt (*i.e.* the principle of legality); and (2) if the intended end is a legally proscribed harm, the failure to effect it because of the lack of a factual condition necessary to its occurrence, is no defense (*i.e.* factual impossibility).

JEROME HALL, GENERAL PRINCIPLES OF CRIMINAL LAW 586 (2nd ed. 1960). Whatever it is that the actor intends to do is simply not a crime, although he may believe it is.[6] *See* JEROME HALL, GENERAL PRINCIPLES OF CRIMINAL LAW 596–97 (2nd ed. 1960).

Although impossibility is generally applied in the context of attempt crimes, it has also been raised and considered in the context of "intent" crimes. *See, e.g., United States v. Contreras*, 422 F.2d 828 (9th Cir.1970) (conviction for assault with intent to commit rape affirmed even where defendant physically incapable of committing rape due to extreme intoxication); *Willis v. State*, 473 S.W.2d 200 (Tex.Crim.App.1971) (impotence no defense to assault with intent to rape). Moreover, this Court has historically recognized, for purposes of pleading, that "attempt" may be used in place of "intent". *See, e.g., Lucero v. State*, 502 S.W.2d 750 (Tex.Crim.App.1973) (use of word attempt instead of intent would not vitiate indictment); *Taylor v. State*, 44 Tex.Crim. 153, 69 S.W. 149 (App.1902) (indictment for "assault with attempt to ravish and have carnal knowledge of" was sufficient to charge assault with intent to commit rape); *Runnells v. State*, 34 Tex.Crim. 431, 30 S.W. 1065 (App.1895) (attempt sufficient to charge intent).

In concluding that "as a matter of law, [appellant] could not have 'intended' to commit the offense of escape when he entered the apartment", the Court of Appeals applied the principle of legal impossibility. Having done everything appellant intended to do, the resulting end would still not be a crime, or at least the crime charged (burglary per unlawful entry into a habitation with intent to commit felony escape) because appellant had already left custody at the time he entered the apartment. Therefore, whatever it was appellant intended to do at the point of entering the apartment was simply not felony escape since he had already escaped previously.

■ One commentator explained why the case of *Wilson*, discussed in footnote 6 herein, represented a legal impossibility:

> In *Wilson* the defendant may have thought he was committing a crime, but if he did it was not because he intended to do something that the criminal law prohibited but rather because he was ignorant of the material alteration requirement of the crime of forgery.

WAYNE R. LaFAVE, AUSTIN W. SCOTT, 2 SUBSTANTIVE CRIMINAL LAW § 6.3, at 45 (1986). Likewise, here appellant may have thought he was committing escape, "but if he did it was not because he intended to do something that the criminal law prohibited but rather because he was ignorant of the" departure from custody requirement of the crime of escape. Accordingly, the Court of Appeals did not err in concluding that it was legally impossible for appellant to have intended to commit the underlying offense of felony escape.

---

6. The following hypothetical is also illustrative: Lady Eldon intends to purchase French lace and smuggle it back into England without paying the customs duty.... The customs officer at Dover brings it to light. He then says to Lady Eldon: "Lucky for you you returned to England today rather than yesterday. I just received word this morning that the government has removed French lace from the duty list."

PAUL H. ROBINSON, 1 CRIMINAL LAW DEFENSES § 85(d), at 432 (1984).

Another example of legal impossibility is illustrated in *Wilson v. State*, 85 Miss. 687, 38 So. 46

(1905). There, the defendant tampered with a draft for $2.50 by writing a "1" in front of the numbers in an attempt to increase the amount payable thereon. However, he did not attempt to change the written version of the amount payable, "two and 50/100". The completed crime of forgery in that jurisdiction required the alteration of "a material part" of the document so that "injury might result." *Id.* at 47. The court held that the defendant's conviction for attempted forgery could not stand because the document as altered would not have been a forgery.

The judgment of the Court of Appeals is affirmed.

CLINTON, J., joins Part I and otherwise concurs in the judgment of the Court.

KELLER, J., dissents.

McCORMICK, Presiding Judge, dissenting on State's petitions for discretionary review.

I dissent. This Court has held in a different context that legally the crime of escape is not a "continuing offense." See Fitzgerald v. State, 782 S.W.2d 876, 881 (Tex.Cr.App. 1990). In this case, however, application of this rule is dependent on a certain fact finding about when the escape was completed before it can be said it was "legally impossible for appellant to have intended to commit the underlying offense of felony escape." Recognizing its duty to instruct the jury on the applicable law, the trial court properly instructed the jury it legally could not convict appellant if it found the offense of escape had been completed before appellant broke into the apartment. On this record, I would hold the trial court properly submitted the issue of whether the escape had been completed as one of fact for the jury to decide, and I would defer to the jury's fact finding on this issue. Holding "as a matter of law" that the escape was completed by the time appellant broke into the apartment usurps the jury's fact-finding role in this case.

In addition, much of the discussion in the majority opinion would be germane to this case had the State alleged appellant broke into the apartment *and* "committed or attempted to commit" the felony offense of escape. See V.T.C.A., Penal Code, Section 30.02(a)(3). But that is not how the State charged the offense in this case. The State alleged appellant broke into the apartment *with the intent to commit felony escape.* See

V.T.C.A., Penal Code, Section 30.02(a)(1). I would hold the evidence supports a finding that when appellant entered the apartment he did so with the intent to depart from custody without permission. It is irrelevant whether appellant legally or factually could have actually committed the offense of escape when he entered the apartment since the State did not allege appellant committed or attempted to commit the offense of escape. See Section 30.02(a)(1). The bottom line is that when the State charges burglary, as it did here, it should make no difference whether the intended felony could have been committed or not.

I respectfully dissent.

MEYERS, Judge, dissenting on State's petitions for discretionary review.

Under our State's statutory theory of unauthorized departure, it is an essential element of escape that the actor be in custody prior to commission of the offense. It is also an element of the offense that he depart from custody without permission. Such a departure can be said to occur only at the moment when he is no longer in custody.[1] It follows that an individual who has departed from custody without permission may be prosecuted for escape without engaging in any further acts of misconduct and that he does not commit the offense of escape again until he is returned to custody and once more departs without permission. In the present context, this necessarily means that appellant could not actually have committed the offense of escape after entering the apartment unless he was still in custody when he entered it or, if not, was recaptured while still inside and left custody again without permission.

But, as both the District Attorney and the State Prosecuting Attorney emphasize, the State did not allege in this case that appellant actually escaped after entering the

---

1. Apparently it is the position of Justice Powers, who filed a dissenting opinion in the lower court, that departure from custody does not occur until one is legally discharged. As I read his analysis, it would follow that appellant in the instant

cause never actually escaped, since his legal status never changed, and could never have changed during the relevant interval. *Lawhorn,* 843 S.W.2d at 272–73. I would reject this unusual reading of the word "custody."

apartment, only that he intended to do so at the time of his unlawful entry. Under such pleadings, the question of sufficiency might depend, in a proper case, upon whether an actor's unlawful entry in the mistaken belief that he was still in custody, and with a conscious objective to escape from that custody, is enough to satisfy the requirement that his entry be made with intent to commit escape.[2]

The Court of Appeals did not resolve this question in the instant cause. Rather, it held simply that "the evidence is conclusive that [appellant] did not commit the offense of burglary with intent to commit felony escape, because he had already completed the offense of escape." *Lawhorn,* 843 S.W.2d at 270. The State Prosecuting Attorney rightly points out that this rationale takes after the Common Law doctrine of impossibility, which did not, however, apply to the intent element of burglary. 2 William Blackstone, Commentaries *127–28. Oddly enough, a majority of this Court agrees that the doctrine somehow controls this cause, holding that it forecloses conviction because, even if appellant did all that he intended in this case, it would not constitute the crime for which he was convicted.

This conclusion seems hopelessly wrong to me for several reasons, not the least of which is that, under our present statutory scheme, the elements of burglary do not include, nor do they necessarily require proof of, an actual ability to commit the intended crime. It is, therefore, a mistake to think that appellant could not have intended to escape when he entered the apartment just because he could not have escaped in fact. Although evidence that he had already left custody is, of course, relevant to his intent at the time of entry, it is not dispositive as a matter of law. In short, there is nothing in the plain language of the statute to imply that a person might not be guilty of burglary if the felony

he intends to commit cannot actually be accomplished, so long as he mistakenly believes that it can.

In a way, the majority concedes this to be true, but insists that it was not just factually impossible for appellant to escape by entering the apartment, but that it was legally impossible as well. This supposed difference between "legal impossibility" and "factual impossibility" is the crux of the majority's argument. The latter, we are told, "has been viewed as a valid defense." Op. at 891. Accordingly, the majority insists that, although persons are responsible for their attempts to commit crime even when success is precluded by extant circumstances, they may not be held criminally responsible for intending a result which was legally impossible. The appellant is supposed to qualify for this latter category because he "could not as a matter of law, have intended to commit the offense of escape when he entered the apartment" because it was legally impossible for him actually to escape after entering. There are three respects in which I disagree with this analysis of the problem.

First, impossibility, legal or factual, is not a defense to any crime under the Texas Penal Code. In fact, there are no Texas cases in the last 30 years that even allude to the doctrine of impossibility, let alone employ it to decide whether evidence of guilt is sufficient for conviction. That, of course, explains why the majority does not so much as cite a single precedent from this jurisdiction in support of its novel contention that intending an impossible result is a defense to crime even when the applicable penal statute plainly provides otherwise. Whatever status impossibility may have had under the Common Law as an excuse or justification, it does not seem to have achieved a similar level of importance in Texas jurisprudence. And just as nothing is a crime in Texas unless proscribed by a competent legislative body,

---

**2.** To prove that appellant entered the apartment with intent to commit escape, the State would have to establish that appellant believed himself at that time still to be in "custody," as meant by the Penal Code, and not merely to be still in the

process of "getting free or away," as is sometimes meant by "escape" in ordinary parlance. *Compare* Tex.Penal Code Ann. § 38.01(2), (3) (West 1989) *with* The New Merriam–Webster Dictionary p. 257 (1989).

Penal Code § 1.03(a), we may safely suppose that there are no Common Law defenses surviving the Penal Code. The substantive criminal law is now entirely a creature of statute in this State.

Second, I do not accept that there is a meaningful difference between legal and factual impossibility. Even the examples given by the majority illustrate the futility of maintaining such a distinction and why the distinction was so difficult to maintain under the Common Law. To cite but a single example from the majority opinion, we are expected to believe without any explanation whatsoever, as if the proposition were somehow self-evident, that attempting to kill someone with an unloaded weapon is factually impossible, whereas attempting to kill someone already dead is legally impossible. Somehow, there is thought to be a difference between mistaking a harmless object for a weapon and mistaking a corpse for a living person. But I do not see the difference, and the majority does not bother to explain it.

Finally, it is perfectly clear as a factual matter that appellant might have had the intent to escape from custody when he entered the apartment even if it was impossible for him actually to do so. All that was required was that he be mistaken about his status. It is no different, really, than other examples of so-called "factual impossibility" given in the majority opinion. Thus, as the Court itself avers, one is culpable for attempting to perform an abortion on a woman who is not pregnant because the act would undoubtedly be a crime if the facts were as the actor mistakenly believed them to be. Likewise, the attempt to pick an empty pocket is as much an attempt to steal as is the attempt to pick a pocket with money in it because the actor's conduct would clearly offend the law if the facts were as he supposed. I do not see, nor has the majority demonstrated, that a mistake about whether a woman is pregnant or has money in her pocket is different in any relevant respect from a mistake about whether a person is in custody.

I think the majority just has an irresistible intuition that no lucid human being could ever actually believe he was in custody when he wasn't, that it would take a profound delusion for a person to think himself bound, shackled, or confined while really at liberty in the world. Perhaps, the Court is right to think so. Indeed, I do not disagree that the evidence in this case was actually insufficient to sustain a conviction for burglary under the theory alleged by the State in its indictment. After all, it was the State's own proof that raised the issue whether appellant had departed from custody before his unlawful entry into the apartment where he was later discovered. Had the State produced no evidence at all of this departure, its proof would simply have been insufficient to show that he had an intent to escape when he entered the apartment. As it is, the only evidence of his actual intent renders it less likely that he entered with intent to escape than it would have been without any proof at all.

Of course, the District Attorney is quite right to insist that, had appellant been prosecuted for escape, a jury might rationally have found the evidence insufficient to show that he had really departed from custody. Because, in a prosecution for escape, the State must prove departure beyond reasonable doubt, relevant evidence of departure might still be regarded by a rational jury as too weak or unclear to justify such a conclusion. In the instant cause, however, it was the State's burden to show, not that appellant had departed, but that he was still in custody, or at least that he believed himself to be in custody, at the time of his unlawful entry. Because the only relevant evidence on this question militates against such a conclusion, it was not rational in my view for the jury to find in the State's favor on this element.

However, my personal belief on this question, and that of my colleagues, is not especially important as I do not think it within this Court's power to make a determination of evidentiary insufficiency on discretionary review. *See King v. State*, 895 S.W.2d 701 (Tex.Crim.App.1995) (Meyers, J., dissenting). Because the Court of Appeals has not yet determined for itself whether the evidence will support a conclusion that appellant mis-

takenly believed himself to be in custody when he entered the apartment in question, I would vacate its judgment and remand this cause for it to complete the evidentiary review it truncated when it erroneously assumed that appellant could not intend to escape if escape was impossible under the circumstances. *Arcila v. State*, 834 S.W.2d 357 (Tex.Crim.App.1992). Although I believe that, on remand, the Court of Appeals would certainly hold the evidence insufficient to establish this essential element of the alleged offense, it is plainly that Court's job, not ours, to make such a determination.

Accordingly, I dissent.

WHITE, J., joins.