**Gerald Cornelius ELDRIDGE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 71863.**

Court of Criminal Appeals of Texas, En banc.

Nov. 20, 1996.

Rehearing Denied March 19, 1997.

believe there is any bar to retrial.

Henry K. Oncken, Houston, for appellant.

Rikke Graber, Assistant District Attorney, Houston, Matthew Paul, State's Attorney, Austin, for State.

Before the court en banc.

*OPINION*

PER CURIAM.

Appellant was convicted of the offense of capital murder. The indictment charged that appellant killed Chirissa Bogany while committing the felony of burglary of a habitation owned by Cynthia Bogany, see V.T.C.A. Penal Code § 19.03(a)(2), and alternatively, that he killed Chirissa and Cynthia Bogany during the same criminal transaction and/or scheme or course of conduct, see V.T.C.A. Penal Code § 19.03(a)(7)(A) and (B). All three theories were submitted to the jury, which found appellant guilty in a general verdict. At punishment, the jury answered the first special issue affirmatively and the second in the negative. Punishment was assessed accordingly at death. Article 37.071

§ 2(b) and (e), V.A.C.C.P.[1] Appeal to this Court is automatic. Article 37.071 § 2(h). Appellant raises eleven points of error, all relating to the special issues at the punishment phase of the trial. He does not challenge the sufficiency of the evidence at either phase of trial. We will affirm.

Briefly, the evidence established that around 5:00 a.m. on the morning of January 4, 1993, appellant went to the apartment of Cynthia Bogany, his ex-girlfriend and mother of his son Terrell. Appellant kicked in the door and shot Cynthia's daughter, Chirissa Bogany, at point blank range between the eyes, killing her instantly. After then shooting at Wayne Dotson and shooting Terrell Bogany at close range,[2] he chased Cynthia Bogany, who had fled the apartment. Appellant caught Cynthia when she tripped and fell on some stairs outside a neighbor's apartment. Despite Cynthia's pleas for her life, appellant shot her twice in the side of the head, also killing her instantly.

■ In his first point of error, appellant contends that the trial court erred in informing members of one of the venire panels that appellant would automatically receive at least a life sentence upon his conviction for capital murder.[3] According to appellant, this violates Article 37.071 § 2(a), which prohibits any mention by any participant in a capital murder trial, to a juror or prospective juror, of the effect of a failure of the jury to agree on either of the special issues submitted to it (i.e., the effect of a hung jury at punishment).

Appellant directs us to the following statements of the trial judge during preliminary comments to one of the panels:

" Court: Immediately upon being found guilty of the offense of capital murder, the defendant is going to receive a life sentence. That's automatic.

\*    \*    \*    \*    \*    \*

"Court: A life sentence in the context of a capital murder case means he does not receive the death penalty. That's what it means in the context of a capital murder case. He gets a life sentence the minute he is found guilty. That's automatic, that's automatic, and only if the State can prove beyond a reasonable doubt that the answer to issue number one should be yes and they prove that the answer to issue number two should be no, only then does the defendant receive the death penalty. If they cannot prove it, he has got that automatic life sentence he got the second he got found guilty. So, for the context of this trial, a life sentence means he does not receive the death penalty. All right?"

By categorically stating a capital defendant will receive at least a life sentence upon a guilty verdict, no matter what might happen at the punishment phase, the trial court necessarily, if implicitly, communicated to the panel that even in the event of a hung jury, a life sentence will be imposed. Informing the jury of this contingency would indeed seem to violate Article 37.071 § 2(a).

In practical effect, however, it is unlikely that the trial judge's comments actually conveyed to the lay jury panel any message whatsoever about the result of a hung jury at the punishment phase of trial. His comments were framed more or less along the lines of V.T.C.A. Penal Code, § 12.31(b), which does not even mention a hung jury situation.[4] We think it would take a considerable stretch to conclude that capital jury panel members, unsophisticated in the law, would glean information about the results of a hung jury from those comments.

In any event, even if we assume that the venire members could make the unlikely leap of logic, that the trial court thus erred, and that appellant properly preserved this error for appeal, we are constrained to conclude there was no harm in the error. For our

1. Unless otherwise indicated, all references to articles are to those in the Texas Code of Criminal Procedure.

2. Terrell survived.

3. Four members of the jury were selected from this panel.

4. Section 12.31(b) of the Penal Code provides in pertinent part:

In a capital felony in which the state seeks the death penalty, prospective jurors shall be informed that a sentence of life imprisonment or death is mandatory on conviction of a capital felony ...

harm analysis, we look to *Sattiewhite v. State,* 786 S.W.2d 271, 278 (Tex.Cr.App.1989), and to *Clark v. State,* 881 S.W.2d 682, 692 (Tex.Cr.App.1994). Both cases involved substantially the same error as appellant alleges here, *viz:* prospective jurors informed of the effect of a failure to agree on a special issue.[5] In both *Sattiewhite* and *Clark,* the jury charge made it clear that the jury could only answer "yes" or "no" to the special issues, and that a "yes" answer must be unanimous while a "no" answer requires ten votes. We found in *Sattiewhite* and *Clark* that this jury instruction "attenuated" any harm. *Sattiewhite,* 786 S.W.2d at 278; *Clark,* 881 S.W.2d at 692. The trial court gave a similar instruction in this cause, to which appellant did not object. As we have said, we must assume that the jury followed the trial court's instructions and conducted itself accordingly. *Clark,* 881 S.W.2d at 692. If the instructions in *Sattiewhite* and *Clark* served to "attenuate" harm in those cases, then so did the instruction here.

Moreover, there is no indication that the jury experienced any confusion in reaching a unanimous verdict. *Sattiewhite,* 786 S.W.2d at 279. The record shows no communication between the jury and the court during the jury's deliberations at punishment. *Id.* Nor does appellant allude to any further mention during voir dire or elsewhere in the trial of other inappropriate comments by the court or any party to the proceeding. Given the existence in this cause of the same circumstances as those that led the Court in *Sattiewhite* and *Clark* to find harmlessness, and given the unlikelihood the panel members would actually have calculated the consequences of a hung jury at punishment from the trial court's comments, we conclude that any resulting harm was attenuated. Accordingly, we hold that the trial court's error, if any, did not contribute to the punishment verdict beyond a reasonable doubt.[6] Tex. R.App.P., Rule 81(b)(2); *Sattiewhite,* 786

S.W.2d at 279. Appellant's first point of error is overruled.

■ In his tenth point of error, appellant alleges that the trial court violated the Eighth and Fourteenth Amendments to the United States Constitution by failing to instruct the jury that a "no" vote by a single jury member would result in a life sentence instead of death despite the statutory requirement of 10 votes for a "no" answer to Article 37.071 § 2(b)(1) or for a "yes" vote to Article 37.071 § 2(e). In his eleventh point of error, appellant argues that the same failure also violates Article I, §§ 10, 13, and 19 of the Texas Constitution. We reject both of these arguments.

We have consistently upheld the constitutionality of Article 37.071 § 2(a) against the challenge that appellant raises in his tenth point of error. *Draughon v. State,* 831 S.W.2d 331, 337–8 (Tex.Cr.App.1992); *Emery v. State,* 881 S.W.2d 702, 711 (Tex.Cr.App. 1994). We continue to believe that there is "nothing in the statute here challenged that operates to diminish the seriousness of jury deliberations or to suggest that ultimate responsibility for determining the propriety of a death sentence rests elsewhere." *Draughon,* 831 S.W.2d at 337. Appellant does not offer any new arguments or reasons why we should change our view. Thus, we decline to reconsider this precedent. Appellant's tenth point of error is overruled.

■ We do not address appellant's eleventh point of error. In his brief, appellant cites the same authority he argued for his tenth point of error. He supplies no additional argument or authority for the proposition that the alleged error also violated the Texas Constitution. As we stated in *Corwin v. State,* 870 S.W.2d 23, 27 n. 2, "it has been the Court's practice to 'decline to pursue appellant's Texas Constitutional arguments for him.'" *Id.,* citing *Johnson v. State,* 853 S.W.2d 527, 533 (Tex.Cr.App.1992); see also

5. In *Sattiewhite* and *Clark* the relevant provision of the Code of Criminal Procedure was Article 37.071(g). This provision has been recodified, without changes, as Article 37.071 § 2(a).

6. Indeed, it would seem that the alleged violation here would only hurt the State. As appellant alleges in points of error ten and eleven, a "no" holdout juror on the first special issue or a "yes" holdout juror on the second special issue, knowing of the automatic life sentence in the absence of twelve "yes" votes on the first special issue or ten "no" votes on the second, would feel empowered to continue holding out for a life sentence.

*McCambridge v. State,* 712 S.W.2d 499, 501–2 n. 9 (Tex.Cr.App.1986). Appellant's eleventh point of error is overruled.

■ In points of error two and seven, appellant alleges that the trial court's refusal to instruct the jury on the parole implications of a life sentence violated the Fourteenth and Eighth Amendments, respectively, to the United States Constitution. Appellant relies on *Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994). In Texas, unlike in South Carolina, a life sentence does not mean life without parole. For this reason, we recently held in *Smith v. State,* 898 S.W.2d 838 (Tex.Cr.App.1995) (plurality opinion), that the mandate in *Simmons,* that the jury be told of parole ineligibility when the prosecution argues future dangerousness in support of the death penalty, does not apply in Texas. *Smith,* 898 S.W.2d at 853. Moreover, the holding in *Smith* as to the admissibility of parole eligibility information was more extensive than the Supreme Court's holding in *Simmons.* Whereas the Court in *Simmons* did not reach the Eighth Amendment claim, in *Smith* the plurality held that it did not violate the Eighth Amendment to prohibit mention of parole eligibility information to the jury. *Id.* at 853; see also *Broxton v. State,* 909 S.W.2d 912, 918–9 (Tex.Cr.App.1995) (adopting for the Court the plurality's holding in *Smith* as to both Eighth and Fourteenth Amendments).

Even under the most charitable view, a requirement that trial courts inform juries of the parole consequences of a life sentence would obtain only if a defendant has shown other evidence that, in combination with parole eligibility, tends to show that a capital defendant will not be a future danger to society. *Willingham v. State,* 897 S.W.2d 351, 359 (Tex.Cr.App.1995) (Clinton, J., concurring). Without more, evidence of parole eligibility is not relevant to future dangerous-

ness. In the instant case, appellant's trial counsel did not offer any evidence that, in combination with minimum parole eligibility, would tend to show that appellant or people like him and in his position will not "commit criminal acts of violence that would pose a continuing threat to society." Article 37.071, § 2(b)(1). Appellant's second and seventh points of error are overruled.

■ For these same reasons, we reject appellant's eighth and ninth points of error. In his eighth point of error, appellant argues that the trial court violated the Sixth Amendment to the United States Constitution by prohibiting appellant's trial counsel from asking questions concerning parole eligibility at voir dire. In his ninth point of error, appellant argues that this denial of proper questioning also violates Article I, § 10 of the Texas Constitution.[7] Under *Smith* information about the parole consequences of a life sentence for appellant would neither be in the jury charge nor a permissible subject of final argument. It could not therefore materially limit trial counsel's effectiveness in any manner to refuse to let him ask questions about parole eligibility during voir dire. Questions about parole eligibility are not proper questions.[8] Thus, appellant's eighth and ninth points of error are overruled.

■ In points of error three and four, appellant contends that Article 37.071 § 2(e) is unconstitutional under the Eighth and Fourteenth Amendments to the United States Constitution because appellate review of the second special issue is impossible. While he argues that the impossibility of review itself is unconstitutional, in his third point of error he argues the unconstitutionality of Article 37.071 § 2(e) is compounded because Article 44.251 nonetheless requires appellate review of 37.071 § 2(e).

---

7. As for appellant's eighth point of error, failing to allow "proper" question does not violate the Sixth Amendment. There is no federal constitutional analog to a claim under Article I, § 10 of the Texas Constitution that a defendant can be denied effective assistance of counsel due to a trial court's erroneous denial of proper questions. See Ex Parte McKay, 819 S.W.2d 478,

488–9 (Tex.Cr.App.1990) (Clinton, J., dissenting from denial of State's motion for rehearing).

8. Again, appellant offered no evidence at trial which, combined with evidence of parole eligibility, tends to show that he will not be a threat to society in the future. *Willingham,* 897 S.W.2d. at 359.

Under Article 37.071 § 2(f), the jury determines whether any evidence has mitigating effect and, if so, how much. We have said that these two decisions are normative and therefore are not reviewable by this Court. *Lawton v. State*, 913 S.W.2d 542, 557 (Tex. Cr.App.1995). So long as the jury has all potentially relevant evidence before it, we continue to defer to the jury and believe its unfettered discretion under Article 37.071 § 2(e) is constitutionally valid. *Id.* As we have consistently done in the past, we decline to review the jury's decision on the mitigation special issue. See *Hughes v. State*, 897 S.W.2d 285, 294 (Tex.Cr.App.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1967, 131 L.Ed.2d 857 (1995); *Colella v. State*, 915 S.W.2d 834 (Tex.Cr.App.1995).

Appellant is therefore correct to say that appellate review of a capital jury's Article 37.071 § 2(e) decision is impossible. But this is not enough to render the capital sentencing scheme unconstitutional. This Court makes sufficiency reviews of Texas juries' guilt/innocence and Article 37.071 § 2(b)(1) future dangerousness decisions. These decisions are fact-bound and hence reviewable for sufficiency of the evidence. As long as these determinations can be reviewed, we are satisfied that the constitutionality of Article 37.071 is not contingent on appellate review of the second special issue. In *Burns v. State*, 761 S.W.2d 353 (Tex.Cr.App.1988), we said that "it is doubtful [that] Eighth Amendment or Due Process considerations absolutely require this Court to reweigh punishment evidence ..." *Id.*, at 356, n. 4., *citing Pulley v. Harris*, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). We have never regarded a mitigation sufficiency review as a prerequisite to the constitutionality of Article 37.071. See *Lawton*, 913 S.W.2d at 547. Accordingly, we overrule appellant's fourth point of error.

█ If appellate review is indeed impossible under Article 37.071 § 2(e), appellant next asks how we can effectuate Article 44.251, which seems to require us to conduct a sufficiency review of a negative answer to Article 37.071 § 2(e). On its face this provision does indeed mandate a reformation of sentence from death to life "if" the evidence is not "sufficient" to support a negative answer to the mitigation issue. See *McFarland v. State*, 928 S.W.2d 482, 498–9 (Tex.Cr. App.1996).

█ In construing a statute, we look first to the literal language, for that is the best indicator of the legislative intent. *Boykin v. State*, 818 S.W.2d 782 (Tex.Cr.App. 1991). In this case, however, we cannot take the statute to mean what it plainly says. A genuine "sufficiency" review of the jury's negative answer to Article 37.071 § 2(e) is a logical absurdity. Because the burden of production (if not persuasion) under Article 37.071 § 2(e) is on the defendant,[9] he can only argue that the jury's negative answer was against the great weight and preponderance of the evidence—*not* that the evidence was "insufficient" to support it. Thus, if we hold Article 44.251(a) to its literal terms, this Court by definition will never reform a sentence of death to life on account of "insufficiency" of the evidence to support a negative finding on mitigation. *McFarland*, 928 S.W.2d at 499.

In order to give Article 44.251(a) effect, we could interpret it to mandate reformation to life upon a finding that the jury's negative answer was against the great weight and preponderance of the evidence. But as we have already shown, Article 37.071 § 2(f)(4) assigns to the jury the task of evaluating what evidence proffered in mitigation is "sufficient" to warrant a life sentence. We cannot say that evidence is mitigating as a matter of law any more than we can say, in a

9. Because appellant is the beneficiary of mitigating evidence, the burden of production should fall to him. See *Arnold v. State*, 786 S.W.2d 295, 298 (Tex.Cr.App.), *cert. denied*, 498 U.S. 838, 111 S.Ct. 110, 112 L.Ed.2d 80 (1990) (State has burden of proof to establish harmless error under Tex.R.App.Proc., Rule 81(b)(2), as beneficiary of the error); see also *Barnes*, 876 S.W.2d at 330 n. 17. Therefore, if the jury verdict is against him, appellant can only argue that the verdict was against the great weight and preponderance of the evidence. Cf. *Meraz v. State*, 785 S.W.2d 146, 155 (Tex.Cr.App.1990) (defendant has burden to prove affirmative defense of insanity and appellate review should inquire whether the evidence was against the great weight and preponderance of the evidence). Appellant does not make that argument here.

non-capital case, that the evidence is insufficient to support a twenty year sentence, or that the great weight and preponderance of the evidence establishes that the proper sentence would have been ten years, probated. As we state above, there is simply no way for an appellate court to review the jury's normative judgment that the evidence did or did not warrant a life sentence.

There is one other alternative. We could construe Article 44.251(a) to mandate that this Court conduct an independent, *de novo* review of the mitigating evidence, and decide according to our own lights whether Article 37.071 § 2(e) ought to be answered in the affirmative. We think it highly unlikely, however, that this construction would jibe with the Legislature's intent. Such a scheme would effectively render the jury's answer to the § 2(e) special issue merely advisory. While that would undoubtedly withstand Eighth Amendment scrutiny, it would constitute a radical departure from our ordinary jury-deferring routine to review the "sufficiency" of special issues at the punishment phase of a capital murder trial. See *Burns,* 761 S.W.2d at 355–356. Presuming the Legislature to be cognizant of this Court's prior caselaw, we would hardly expect it to mandate a "sufficiency" review if by that it meant this Court should re-evaluate and reweigh the same evidence the jury has already heard. *McFarland,* 928 S.W.2d at 499.

Our inability to effectuate Article 44.251 in relation to the second special issue does not, however, make Article 37.071 § (2)(e) constitutionally infirm. We conduct legal sufficiency reviews of a guilty verdict and of the first special issue. We do not think that the Constitution requires any further appellate review of Article 37.071 § 2(e). *Id.* at 654; *Lawton,* 913 S.W.2d at 547. Appellant's third point of error is overruled.

■ In appellant's fifth point of error, he alleges that Article 37.071 is unconstitutional because § 2(e) fails to assign burdens of proof with respect to aggravating and mitigating circumstances. This violates the Eighth Amendment, he argues, because it

provides no guidance to the jurors in their deliberations. In his sixth point of error, he contends that it was error for the trial court not to instruct the jury that the State had the burden to prove that there were no mitigating circumstances which call for a life sentence.

In *Barnes v. State,* 876 S.W.2d 316, 330 (Tex.Cr.App.1994), we stated that "the Eighth and Fourteenth Amendments do not require that a burden be placed on the State" as to the mitigating evidence. *Id.* Indeed, the Supreme Court held in a plurality opinion that it does not violate the Constitution to place the standard of proof as to mitigating circumstances on the defendant. *Walton v. Arizona,* 497 U.S. 639, 649–651, 110 S.Ct. 3047, 3055–56, 111 L.Ed.2d 511, 525–527 (1990) (plurality opinion).[10] See also, n. 9, *ante.* Appellant's sixth point of error is overruled.

■ Appellant also contends that Article 37.071 § 2(e) is unconstitutional because it assigns no burden as to aggravating circumstances. It is unclear what appellant means by this; we can only speculate. He might be referring to the aggravating circumstances considered under Article 37.071 § 2(b), i.e. future dangerousness. But the burden as to future dangerousness is expressly assigned to the State in § 2(b). The State must prove, beyond a reasonable doubt, that a defendant represents a continuing threat to society. Article 37.071 § 2(e), supra.

Alternatively, appellant might mean that there is a balancing of aggravating and mitigating circumstances inherent in the requirement in Article 37.071 § 2(e) of consideration of a defendant's individual circumstances and personal moral culpability. Appellant does not explain how § 2(e) implicitly calls for aggravating circumstances when the plain language of the statute does not. Further, he points to no particular testimony or argument in this case raising the issue of such non-statutory aggravators. In fact, appellant did not ask for an instruction regarding balancing the mitigating and non-statutory ag-

**10.** The Arizona capital statute in *Walton* required the defendant to prove sufficient mitigating cir- cumstances by a preponderance of the evidence.

gravating evidence under § 2(e), nor does he allege any egregious error in the jury charge. *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr. App.1984). Finally, he never proposes how the burden of proof should operate in this balancing, and he never explains how, as he alleges, "the accused has the burden to disprove the existence of aggravating circumstances."

More importantly, appellant does not explain why § 2(e) would necessarily call for a consideration of non-statutory aggravating evidence when the necessary narrowing function has already been taken care of under § 2(b).[11] On its face, Article 37.071 § 2(b) is the only part of the statute that involves aggravating evidence. The issue of future dangerousness is completely independent of the special issue under § 2(e). The capital jury is told that it cannot answer the second special issue until it has unanimously answered the first "yes," beyond a reasonable doubt. At this point, it is instructed to determine whether, in spite of its finding beyond a reasonable doubt that appellant would represent a continuing threat to society, the circumstances of appellant's crime and life nonetheless call for leniency, i.e., a life sentence. The purpose of the second special issue from appellant's perspective is not to rebut the affirmative answer to the first special issue. Rather, the purpose is to determine whether the individual circumstances of appellant's case and background call for sparing his life, even though the jury has found that he may be a continuing threat to society. Because § 2(e) does not contemplate aggravating factors, its silence as to the burden of proof on aggravating factors does not make it constitutionally infirm. *McFarland*, 928 S.W.2d at 518–9.

■ Similarly, silence as to the burden of proof on mitigating circumstances does not render § 2(e) unconstitutional. As we have said, the decision called for by the second special issue is a moral, normative one, independent of the factual future dangerousness decision. The second special issue calls for a normative judgment in which the jurors themselves decide what is mitigating evidence and the extent to which that evidence is mitigating. Unlike a factual determination, the assignment of a burden of proof to that decision would not make sense, unless the burden of proof goes to the facts underlying any potentially mitigating evidence. Although the Supreme Court has sanctioned placing a burden of proof as to mitigation evidence on the defendant, *Walton*, supra, we fail to understand how a burden of proof can be applied to a moral judgment.

Appellant further contends the absence of a burden of proof on § 2(e) violates *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), because it provides no guidance to jurors answering these questions. We disagree. The unlimited discretion that each juror has in answering § 2(e)—both in determining what evidence is mitigating and how mitigating such evidence is—is completely consonant with (and perhaps even required by) the individualization requirements of *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). Thus, we do not think that Article 37.071 § 2(e) is unconstitutional for failing to assign burdens of proof as to either mitigating evidence, or as to non-statutory aggravating evidence (assuming a jury is indeed authorized to consider such evidence under § 2(e)). Appellant's fifth point of error is overruled.

Finding no reversible error, we affirm the judgment of the trial court.

BAIRD, J., concurs.

I disagree with the majority's treatment of appellant's third and fourth points of error for the reasons stated in *Morris v. State*, 940 S.W.2d 610 (Tex.Cr.App.1996)(Baird, J., dissenting). And, for reasons stated in *Mata-*

---

**11.** The first special issue reduces the class of death-eligible capital defendants. A death sentence can be entered only against defendants whom a jury has found will be future dangers to society. The first special issue thus satisfies the narrowing requirement in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), i.e., that the death penalty is reserved only for that subclass of murderers whose crimes truly merit the most extreme penalty.

*moros v. State* 901 S.W.2d 470, 479 (Tex.Cr. App.1995) (Baird, J., concurring), I join only the judgment of the Court.