

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

December 21, 1998

Mr. James D. Goerke
Executive Director, Advisory Commission
   on State Emergency Communications
333 Guadalupe Street, Suite 2-212
Austin, Texas 78701-3942

Opinion No. DM-494

Re: Whether an emergency communications district may unilaterally withdraw from participation in a regional 9-1-1 plan under Health and Safety Code chapter 771 and related questions (RQ-1021)

Dear Mr. Goerke:

You request an opinion from this office regarding the provisions of chapter 771 of the Health and Safety Code (the "act"). You first ask whether an emergency communications district as defined by section 771.001(3)(A) of the act that elected to participate in a regional 9-1-1 service[1] plan may unilaterally withdraw from the plan. Because the act expressly provides that a district's participation in a regional plan is optional, we conclude that it may so withdraw. You next ask whether the district or the Advisory Commission on State Emergency Communications (the "advisory commission") determines when the withdrawal is effective. Based on our prior answer, we conclude that the withdrawal is effective on the date determined by the district. Finally, you ask whether the advisory commission must distribute a portion of the wireless 9-1-1 emergency service fee authorized by section 771.0711(a) of the act to a district that withdraws from a regional plan. Because the act requires distribution of a portion of the fee to a district that does not participate in a regional plan, we conclude the advisory commission must distribute a portion of the fee to a district that withdraws from a plan.

Before discussing your specific questions, we briefly review the relevant parts of the act. The legislature adopted the act in 1987 to implement a statewide 9-1-1 emergency telephone number service.[2] The act requires the advisory commission to administer implementation of the statewide 9-1-1 service. The advisory commission is directed, among other things, to approve regional plans

---

[1] "'9-1-1 service' means a telecommunication service that provides the user of the public telephone system the ability to reach a public safety answering point by dialing the digits 9-1-1." Health & Safety Code § 771.001(6).

[2] *See* Act of May 21, 1987, 70th Leg., R.S., ch. 236, 1987 Tex. Gen. Laws 1541, 1546; House Comm. on State Affairs, Bill Analysis, H.B. 911, 70th Leg. (1987) (Purpose).

for establishing and operating a 9-1-1 service, and to allocate money to prepare and operate the regional plans.[3]

An emergency communications district ("district"),[4] may choose to participate in a regional plan for 9-1-1 service for the region in which the district is located on approval of the advisory commission.[5] A regional plan is developed and submitted for the advisory commission's approval by each regional planning commission established under Local Government Code chapter 391 (the "regional commission")[6] for the region the regional planning commission serves.[7] Participation in the plan does not affect the organization or operation of the district except that the district may not collect an emergency communication or other special fee for 9-1-1 service unless permitted by the act.[8]

The act authorizes the advisory commission to impose certain fees to finance the regional 9-1-1 service plans. The advisory commission may impose a 9-1-1 emergency service fee on each local exchange access line or equivalent local exchange access line.[9] The emergency fee is

---

[3]Health & Safety Code § 771.051(a)(1), (3), (5).

[4]Health and Safety Code section 771.001(3) states that an "[e]mergency communication district" means:

> (A) a public agency or group of public agencies acting jointly that provided 9-1-1 service before September 1, 1987, or that had voted or contracted before that date to provide that service; or

> (B) a district created under Subchapter B, C, or D, Chapter 772 [of the Local Government Code]. [Footnotes omitted.]

Section 771.001(7) states that "public agency," in turn, means:

> the state, a municipality, a county, an emergency communication district, a regional planning commission, an appraisal district, or any other political subdivision or district that provides, participates in the provision of, or has authority to provide fire-fighting, law enforcement, ambulance, medical, 9-1-1, or other emergency services.

[5]Health & Safety Code § 771.058(b).

[6]*Id.* § 771.001(10) (definition of regional planning commission).

[7]*Id.* § 771.055.

[8]*Id.* § 771.058(c).

[9]*Id.* § 771.071(a). These fees are delivered to the regional planning commissions and distributed to public agencies in the county for use in providing 9-1-1 service. *Id.* § 771.071(e), (f).

not applicable to and may not be imposed in a non-participating district.[10] In addition to the 9-1-1 emergency service fee, the advisory commission may impose a 9-1-1 equalization surcharge on each customer receiving intrastate long-distance service, including customers served by a non-participating district.[11] Finally, in this past legislative session, the legislature authorized the advisory commission to impose a 9-1-1 emergency service fee on each wireless telecommunications connection.[12] Moneys collected pursuant to this authorization are distributed by the advisory commission to each regional planning commission and district in proportion to the population served by the commission or district and may be used only for services related to providing 9-1-1 service.[13]

Having reviewed the relevant portions of the act, we turn back to your specific questions. We understand from briefs submitted by the advisory commission and the City of Corpus Christi (the "city") that the circumstances giving rise to your questions are as follows: The city has provided 9-1-1 service throughout the municipality since November 1985, and is therefore an emergency communication district described in section 771.001(3)(A) of the act, which is not required to, but may, participate in a regional plan to provide 9-1-1 service. The city chose to participate in a regional plan developed by the Coastal Bend Council of Governments ("CBCOG") for the Coastal Bend Region (the "Coastal plan") by a resolution adopted on July 7, 1988. The advisory commission approved the Coastal plan, which included the city, on January 10, 1990. On July 31, 1990, the city entered into an Interlocal Cooperation Agreement with CBCOG (the "interlocal agreement"), extending initially through December 31, 1995, "to provide for the administration of 9-1-1 service in the CBCOG region as authorized by Article 1432(f) [,] Sec. 5(b) [Health and Safety Code section 771.055(b)] and Article 4413(32c) [Government Code chapter 791] V.T.C.S."[14] The city now desires to withdraw from participation in the Coastal plan effective January 1, 1998, and has requested that the advisory commission cease collecting the 9-1-1 emergency service fee within the city effective June 1, 1998.

Because the act does not specifically authorize a district to terminate its participation in a regional plan, you first ask whether the city as an emergency communication district that elected to participate in a regional 9-1-1 plan may later unilaterally withdraw from the plan. No Texas case or attorney general opinion has addressed this question. Several principles, however, guide us in answering this question of first impression. Our ultimate purpose must be to effect the legislature's

---

[10]*Id.* § 771.071(a), (d).

[11]*Id.* § 771.072(a). A portion of the equalization surcharges collected is allocated by the advisory commission to the Texas Department of Health and to each planning commission or its designated public agency to carry out the regional plans. *Id.* § 771.072(d), (e). The balance of the surcharge is appropriated to the advisory commission to fund approved regional plans and regional poison control centers and to carry out its duties under the act. *Id.* § 771.072(f).

[12]*Id.* § 771.0711(a).

[13]*Id.* § 771.0711(c).

[14]Interlocal Cooperation Agreement at 1, July 31, 1990.

intent.[15] The primary indicator of legislative intent is the statute's literal language because it best indicates the legislature's intent at the time it adopted the statute.[16] The existence or nonexistence of the particular intent of a statute may be inferred from the fact that the statute does not contain a certain provision.[17] Lastly, the consequences of a particular construction may be considered in construing a statute.[18] Application of these principles leads us to conclude that the legislature intended a district's participation in a regional plan to be optional, which necessarily implies that that a district may withdraw from a regional plan when it no longer desires to participate.

Looking at the literal language of the act, we observe that the act expressly provides for a district's optional participation in a regional plan. Section 771.058(a) provides that a county of a population of 120,000 or less or another public agency located in the county is not required to participate in a regional plan but may choose to do so. Similarly subsection (b) provides that a district may choose to participate in the regional plan. By definition, optional participation implies the authority not to participate in a regional plan if a district does not so desire.[19]

A district does not lose its authority to choose not to participate in a regional plan by its initial participation in the plan. Section 771.058(c) expressly provides that participation in a regional plan does not affect the organization or operation of a district except that it may not collect the emergency communication fee or other special fee for 9-1-1 service not permitted by the act. Participation in a regional plan does not change a district's identity or authority. The only express limitation on a district's authority resulting from the participation is that the district may not collect 9-1-1 service fees not permitted by the act. There are no other limitations. Thus, a district's authority to choose not to participate in a plan does not change by its participation.

Significantly, there is no provision expressly prohibiting a district from terminating its participation in a regional plan or stating that participation in a plan is perpetual. If the legislature intended a district's participation to be perpetual, we believe it would have so provided and made that intention clear.[20] It has not done so and we cannot read into the act such an onerous restriction

---

[15]*Texas Water Comm'n v. Brushy Creek Mun. Util. Dist.*, 917 S.W.2d 19, 21 (Tex. 1996).

[16]*Eldridge v. State*, 940 S.W.2d 646, 652 (Tex. Crim. App. 1996).

[17]*State v. Kaiser*, 822 S.W.2d 697, 700 (Tex. App.--Fort Worth 1991, writ ref'd); *see also State v. Broaddus*, 952 S.W.2d 598, 601 n.4 (Tex. App.--Houston [14th Dist.] 1997, no writ).

[18]Gov't Code § 311.023(5).

[19]*See* Gov't Code § 311.011(a) ("Words and phrases shall be read in context and construed according to rules of grammar and common usage."); WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 829 (defining "optional" as "involving an option" and "not compulsory"); *id.* (defining "option" as "an act of choosing," "the power or right to choose: freedom of choice").

[20]*See Eldridge*, 940 S.W.2d at 652 (primary indicator of legislative intent is statute's literal language); *Kaiser*, (continued...)

based on the legislature's failure to expressly provide that a district may unilaterally withdraw from a regional plan as the advisory commission argues. Construing the act to prohibit a district from withdrawing from a regional plan would require a district to continue participating when it no longer desires or considers it beneficial to its residents to do so.[21] If the legislature had intended such a result, it would have expressly so provided.

Given our conclusion that the act impliedly authorizes a district to withdraw from a regional plan, we do not address the city's arguments that its participation in and withdrawal from the Coastal plan is governed by the interlocal agreement with CBCOG[22] or by the city's status as a home rule city.

You next ask whether the advisory commission or a district determines the effective date of a district's withdrawal from a regional plan given the act's silence on the subject. Based on our conclusion above that optional participation means that a district may terminate its participation in a regional plan when it no longer desires to participate in the plan, it follows that the effective date of its withdrawal must be the date determined by the district. Determination by any other entity would allow that entity to dictate the duration of a district's participation. This result would render meaningless the statutory provision for a district's optional participation. Presumably, a withdrawing district will designate an effective withdrawal date after conferring with the advisory commission and the regional commission that allows the parties to responsibly address those matters impacting on emergency 9-1-1 service in the region and in the state.

Finally, you ask whether the advisory commission must distribute a portion of the wireless 9-1-1 service fees to an emergency communication district, "which once participated in a regional plan but is no longer participating in a regional plan[.]" Because the statute expressly requires it, we conclude in the affirmative.

Section 771.0711(c) provides that within 15 days of the date of collection of the wireless 9-1-1 service fees

> the advisory commission shall distribute to each regional planning commission and emergency communication district a portion of the money

---

[20](...continued)
822 S.W.2d at 700 (existence or nonexistence of particular intent may be inferred from fact that statute does not contain certain provision).

[21]*See* Gov't Code § 311.023(5) (court may consider consequence of a particular construction).

[22]In any case, this office does not construe or interpret contracts. *See, e.g.,* Attorney General Opinions DM-192 (1992) at 10, JM-697 (1987) at 6. We note, however, that the interlocal contract plainly states that the contract is for the administration of and not for participation in the Coastal plan. *See* Interlocal Contract Agreement at 1; Health & Safety Code § 771. 055(b) (regional plan may be administered by emergency communication district, municipality, county, or combination of these, or by other means as determined by regional commission).

that bears the same proportion to the total amount collected that the population of the area served by the commission or district bears to the total combined population of the areas served by a commission or district.

Unlike the emergency service fee that the advisory commission may only impose in geographical areas participating in a regional plan,[23] the advisory commission is authorized to collect the wireless 9-1-1 service fee statewide.[24] However, the advisory commission must remit to the regional commissions and the districts an amount proportional to the population served by the regional commission and the districts. Population of a district that is no longer participating in a regional plan is, of course, no longer served by the regional commission but by the district. Therefore, by terms of the statute, the district is entitled to that portion of the moneys collected that is proportional to the population the district serves.

[23]*See* Health & Safety Code § 771.071(a).

[24]*See id.* § 771.0711(a).

## S U M M A R Y

Chapter 771 of the Health and Safety Code impliedly authorizes an emergency communication district that elected to participate in a regional plan for 9-1-1 service to unilaterally withdraw from the plan. Withdrawal from a plan is effective on the date determined by the district. The Advisory Commission on State Emergency Communications must distribute a portion of the wireless 9-1-1 emergency fees collected to the district that withdraws.

Yours very truly,

D A N   M O R A L E S
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee