NUMBER 13-08-599-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


TROY HUFFMASTER, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 214th District Court 

of Nueces County, Texas.

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Garza and Vela


Memorandum Opinion by Justice Vela



 Appellant, Troy Huffmaster, appeals his jury conviction for the offense of escape,
a third-degree felony. See Tex. Penal Code Ann. § 38.06(a)(1), (c) (Vernon Supp. 2009). 
The jury, having found true the enhancement allegations that Huffmaster previously had
been convicted of two felony offenses, assessed punishment at twenty-five years'
imprisonment. In three issues, Huffmaster argues (1) the evidence is legally and factually
insufficient to support his conviction, (2) the trial court erred in charging the jury, (3) the
prosecutor made an improper remark to the jury during closing argument, and (4) the trial
court erred in admitting evidence. We modify the judgment and, as modified, affirm the
judgment.

I. Factual Background


 On the night of July 5, 2008, Troy Huffmaster was arrested for public intoxication. 
He was transported to the Port Aransas jail detention facility by Officer Sandra Flores, a
sergeant with the Port Aransas Police Department. While they were inside the detention
facility's booking area, Officer Flores told Huffmaster to have a seat. As Officer Flores
started to do some paperwork, she heard a deputy arguing with someone. Hearing this,
Officer Flores told Huffmaster "not to move" and then helped the deputy. At this time,
Officer Flores heard Joe Garza, a paramedic who was inside the detention facility, "yell that
he [Huffmaster] was escaping." After helping the deputy, Officer Flores immediately ran
after Huffmaster, chasing him behind the police station. She caught up to him long enough
to pepper spray him, but he kept running.

 As the chase entered a residential area, Officer Flores grabbed both of his
shoulders. When Huffmaster leaned forward, both of them fell to the ground. Huffmaster
struggled with Officer Flores, and she again pepper sprayed him in the face. Huffmaster
was on his stomach, and she was on his back. He then tried to bring his arms out from
underneath him, trying to turn around, and "[p]ushing his weight back." When he turned
around and "lifted one arm up," she put a cuff on it. Then, she put her knee into his back
and handcuffed his hands behind his back. Officer Flores suffered a knee injury while
struggling with Huffmaster.

 Joe Garza, the paramedic who was inside the detention facility when Huffmaster ran
out the door, testified that when Officer Flores went to help the deputy with the combative
subject, he saw Huffmaster "get up and head for the door." At that point, Garza told Officer
Flores that Huffmaster "was running." Garza ran after Huffmaster, but Officer Flores
caught up to him first. While Garza was running to where Officer Flores and Huffmaster
were, he saw that "she was still struggling with him." He saw Officer Flores "on top of him. 
He was clearly trying to push her off to, you know, continue getting away. She was able
to, you know, keep him contained and took him into custody at that time." 

 Huffmaster testified he understood he was under arrest for public intoxication. He
testified that while he was in the detention facility, "another gentleman I guess they had
arrested had come in. And he was screaming and hollering and yelling and they were
trying to physically, you know, get him under control. . . . They were fighting with him to get
him under control." When defense counsel asked him, "[W]hat reaction did that cause in
you?", he said, "I felt fear of my life at that particular point in time . . . I took off running, not
knowing where I was going." He said he took off running because "I was afraid . . . I was
afraid of a lot of things at that particular point in time." He said he "ran out the door and
I had no idea where I was going. I just--I ran." He heard Officer Flores running up behind
him, screaming for him to stop. He testified Officer Flores "came up from behind. We went
to the ground. She put her knee in my back and leaned over and hit me again with another
burst of the pepper spray." When she sprayed him with the pepper spray, he "tried to get
[his] hands up to block the spray." He said he had no intention of hurting her. He denied
he was trying to either hit or strike her.

 Huffmaster stated he was on parole and that he had been convicted of the felony
offenses of burglary of a habitation, burglary of a building, and theft. For these offenses,
he served time in prison and was "paroled out" in 2002. 

 On cross-examination, Huffmaster testified, without objection, that he had four prior
felony convictions: two for burglary of a habitation; one for burglary of a building; and one
for second-degree felony theft. He knew he was not allowed to drink alcohol while on
parole. He testified he knew "for sure" his parole would not have been revoked because
of the public intoxication offense "[b]ecause I've been through the process." He also
testified he had nothing to fear from Officer Flores and that he knew he was not free to
leave the detention facility. He testified he ran:

 [b]ecause I was afraid. I don't know if anybody in here has ever had an
anxiety attack. But I take medication for anxiety. And for whatever reason,
at that particular point in time, whether it was something that the gentleman
said or just seeing them struggle, all of the anxiety, all the worrying, all the
stress came to a head. And I just--I seen them struggling and I freaked out
and I took off and I ran. It had nothing to do with my parole. . . .

II. Discussion


A. Sufficiency of the Evidence

 In issue one, Huffmaster argues the evidence is legally and factually insufficient to
sustain his conviction. Specifically, he complains the evidence does not show he
intentionally or knowingly intended to escape from the custody of the Port Aransas
detention facility.

 1. Standard of Review-Legal Sufficiency

 In reviewing the legal sufficiency of the evidence to support a conviction, we view
all the evidence in the light most favorable to the verdict in order to determine whether any
rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Sanchez v. State, 275
S.W.3d 901, 902 n.2 (Tex. Crim. App. 2009). This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence,
and to draw reasonable inferences from basic facts to ultimate facts. Jackson, 443 U.S.
at 319. The trier of fact is the sole judge of the weight and credibility of the evidence. Tex.
Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Margraves v. State, 34 S.W.3d 912, 919
(Tex. Crim. App. 2000). Thus, when performing a legal-sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of
the fact-finder. Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We must
resolve any inconsistencies in the evidence in favor of the judgment. Curry v. State, 30
S.W.3d 394, 406 (Tex. Crim. App. 2000).

 a. Offense of Escape

 Legal sufficiency is measured by the elements of the offense as defined by a
hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App.
1997); Adi v. State, 94 S.W.3d 124, 131 (Tex. App.-Corpus Christi 2002, pet. ref'd). There
are three elements in the offense of escape: "(1) escape (2) from custody (3) after having
been arrested for, charged with or convicted of an offense." Scott v. State, 672 S.W.2d
465, 466 (Tex. Crim. App. 1984); Dickey v. State, 189 S.W.3d 339, 341 (Tex.
App.-Texarkana 2006, no pet.); see Tex. Penal Code Ann. § 38.06(a). "'Escape' means
unauthorized departure from custody. . . ." Id. § 38.01(2) (Vernon 2003). "'Custody'
means: (A) under arrest by a peace officer. . . ." Id. § 38.01(1)(A). Accordingly, "it is an
element of the offense of escape that the defendant is in custody prior to the offense." 
Lawhorn v. State, 898 S.W.2d 886, 890 (Tex. Crim. App. 1996). "It is also an element of
the offense that the defendant depart from custody without permission." Id. "[T]he phrase
'departure from custody' denotes the act of leaving a state of detention or restraint by a
peace officer and once the act is done the escape is accomplished." Id. (1) 

 An "escape can occur only after an officer has successfully restrained or restricted
a suspect--that is, when the officer's grasp has amounted to an arrest." Warner v. State,
257 S.W.3d 243, 247 (Tex. Crim. App. 2008) (emphasis in original). For purposes of the
escape statute, an arrest is completed when (1) "a person's liberty of movement is
successfully restricted or restrained, whether this is achieved by an officer's physical force
or the suspect's submission to the officer's authority"; and (2) "'a reasonable person in the
suspect's position would have understood the situation to constitute a restraint on freedom
of movement of the degree which the law associates with formal arrest.'" Medford v. State,
13 S.W.3d 769, 773 (Tex. Crim. App. 2000).

 Proof of knowledge or intent is an inference that may be drawn by the factfinder
both from direct evidence and from evidence of the circumstances surrounding the act. 
Guevara v. State, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) (holding that intent may be
inferred from circumstantial evidence such as the words, acts, or conduct of the accused);
Brown v. State, 122 S.W.3d 794, 800 (Tex. Crim. App. 2003) (concluding that jury may
infer intent from any facts in evidence); Wolfe v. State, 917 S.W.2d 270, 275 (Tex. Crim.
App. 1996) (stating that knowledge is inference drawn by trier of fact from all
circumstances). Therefore, a jury can infer knowledge or intent from the acts, conduct, and
remarks of the accused and from the surrounding circumstances. Hernandez v. State, 819
S.W.2d 806, 810 (Tex. Crim. App. 1991); LaPoint v. State, 750 S.W.2d 180, 182 (Tex.
Crim. App. 1986).

 b. Analysis

 The evidence showed Huffmaster was arrested for public intoxication and that
Officer Flores, a Port Aransas police officer, transported him to the Port Aransas jail
detention facility. While at the facility's booking area, Officer Flores told Huffmaster "not
to move" before she left to help the deputy with the combative subject. Thus, a rational
jury could have concluded Huffmaster was under arrest for purposes of section 38.06
because: (1) his liberty of movement was successfully restricted or restrained; and (2) a
reasonable person in Huffmaster's position would have understood the situation to
constitute a restraint on freedom of movement of the degree which the law associates with
formal arrest. See Medford, 3 S.W.3d at 773. Accordingly, Huffmaster was "in the
custody" of Officer Flores when he was under arrest for the offense of public intoxication. 
See Warner, 257 S.W.3d at 247 (holding "the language of the [escape] statute expressly
requires that a person have been in custody before he can escape," which means "an
escape can occur only after an officer has successfully restrained or restricted a suspect").

 Huffmaster testified that when he saw the officers trying to restrain the combative
subject, he "felt fear of my life at that particular point in time . . . I took off running, not
knowing where I was going." He said he ran because he was "afraid" and because of
anxiety. When asked what in particular he was afraid of, he replied, "I was afraid of a lot
of things at that particular point in time."

 After viewing the evidence in the light most favorable to the verdict, we conclude the
evidence is legally sufficient for a rational jury to find Huffmaster intentionally or knowingly
intended to escape from custody while under arrest for an offense. We hold the evidence
is legally sufficient to support the guilty verdict beyond a reasonable doubt. See Fitzgerald
v. State, 782 S.W.2d 876, 879 (Tex. Crim. App. 1990) (holding felony offense of escape
was completed the moment an inmate "was outside the confines of the penitentiary . . .
without authority").

 2. Standard of Review-Factual Sufficiency

 In a factual-sufficiency review, the only question to be answered is: "Considering
all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a
reasonable doubt?" Grotti v. State, 273 S.W.3d 273, 293 (Tex. Crim. App. 2008). 
Evidence can be deemed factually insufficient in two ways: (1) "the evidence supporting
the conviction is 'too weak' to support the factfinder's verdict"; or (2) "considering conflicting
evidence, the factfinder's verdict is 'against the great weight and preponderance of the
evidence.'" Laster v. State, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009) (quoting Watson
v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006)). When conducting a factual-sufficiency review, we must defer to the jury's findings. Id. (citing Cain v. State, 958
S.W.2d 404, 407 (Tex. Crim. App. 1997)). The court of criminal appeals has "set out three
'basic ground rules' implementing this standard." Id. (quoting Watson, 204 S.W.2d at 414). 
First, we must consider all of the evidence in a neutral light, as opposed to in a light most
favorable to the verdict. Id. (citing Watson, 204 S.W.3d at 414). Second, we "may only
find the evidence factually insufficient when necessary to 'prevent manifest injustice.'" Id.
(quoting Cain, 958 S.W.2d at 407). Although the verdict is afforded less deference during
a factual sufficiency review, an appellate court is not free to "override the verdict simply
because it disagrees with it." Id. (citing Cain, 958 S.W.2d at 407). Third, we must explain
why the evidence is too weak to support the verdict or why the conflicting evidence greatly
weighs against the verdict. Id. (citing Watson, 204 S.W.3d at 414).

 Viewing the evidence neutrally, we conclude the evidence supporting the conviction
is not so weak that the jury's determination is clearly wrong and manifestly unjust, and that
the verdict is not against the great weight and preponderance of the evidence. We hold
the evidence is factually sufficient to support the conviction. Issue one is overruled.

B. Punishment Phase


 In issue two, Huffmaster argues that during the punishment phase, the trial court
and the prosecutor prejudiced the jury by erroneously telling the jurors, in open court and
in the punishment charge, that the offense of escape was a second-degree felony, when
in fact it is a third-degree felony. Huffmaster fails to cite any supporting authority showing
how he suffered harm.

 1. Preservation of Error

 To preserve an issue for appellate review, "the brief must contain a clear and
concise argument for the contentions made, with appropriate citations to authorities and
to the record." Tex. R. App. P. 38.1(i). "An argument that fails to cite supporting authority
presents nothing for review." Rocha v. State, 16 S.W.3d 1, 20 (Tex. Crim. App. 2000)
(citing McFarland v. State, 928 S.W.2d 482, 512 (Tex. Crim. App. 1996) and Tex. R. App.
P. 38.1(h)); see Dunklin v. State, 194 S.W.3d 14, 23 (Tex. App.-Tyler 2006, no pet.); Willis
v. State, 192 S.W.3d 585, 597 (Tex. App.-Tyler 2006, pet. ref'd); Dennis v. State, 151
S.W.3d 745, 752 (Tex. App.-Amarillo 2004, pet. ref'd); King v. State, 17 S.W.3d 7, 23
(Tex. App.-Houston [14th Dist.] 2000, pet. ref'd) (op. on reh'g). Because Huffmaster has
failed to cite supporting authority for his argument, his issue is inadequately briefed and
presents nothing for review. Tex. R. App. P. 38.1(i); Rocha, 16 S.W.3d at 20 (argument
that fails to cite to supporting authority in support of claim presents nothing for review).

 Even if Huffmaster had preserved this complaint, we conclude he suffered no
egregious harm by the error in the charge. Section 38.06 provides, in relevant part, that
escape is a third degree felony if the accused "is confined in a secure correctional facility;
. . . ." Tex. Penal Code Ann. § 38.06(c)(2). "'Secure correctional facility' means (A) a
municipal or county jail; . . . ." Id. § 1.07(a)(45).

 In this case, the face of the charging instrument showed the heading "REINDICT." 
Below the heading, the charging instrument stated, in columnar fashion, "CHARGE: 
ESCAPE" "STATUTE: TEXAS PENAL CODE SECTION 38.06" "DEGREE: "THIRD
DEGREE." The language of the charged offense stated, in relevant part, that Huffmaster

 escape[d] from the custody of Sandra Flores, who was then and there a Port
Aransas Police Officer, when the said defendant was under arrest for or
charged with the offense of Public Intoxication, and the said defendant was
then and there confined in a secure correctional facility, namely, Port
Aransas Police Department jail detention facility. . . .


 2. State's Closing Argument

 In her closing argument at the punishment phase, the prosecutor told the jury, the
"charge of escape is a second degree felony." Because Huffmaster did not object and
obtain any adverse ruling (2) from the trial court, he has failed to preserve error, if any. See
Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996) (court held that "a defendant's
failure to object to a jury argument or a defendant's failure to pursue to an adverse ruling
his objection to a jury argument forfeits his right to complain about the argument on
appeal").

 3. Charge Error

 During the punishment phase, the trial court, while reading the punishment charge
to the jury, told the jury, "Members of the jury, you have found the Defendant, Troy
Huffmaster, guilty of escape, a felony of the second degree." (3) When evaluating charge
error, we first determine whether there was error in the charge. Almanza v. State, 686
S.W.2d 157, 174 (Tex. Crim. App. 1985) (op. on reh'g). If so, "the next step is to make an
evidentiary review . . . as well as a review of any other part of the record as a whole which
may illuminate the actual, not just theoretical, harm to the accused." Id.

 Here, the charge was erroneous because the jury convicted Huffmaster of third-degree felony escape. However, we do not find Huffmaster suffered egregious harm. 
When, as in this case, an accused complains of an unobjected-to error in the charge, "he
will obtain a reversal only if the error is so egregious and created such harm that he 'has
not had a fair and impartial trial'--in short 'egregious harm.'" Almanza, 686 S.W.2d at 171. 
The error must "'go to the very basis of the case,'" "deprive the accused of a 'valuable
right,'" or "'vitally affect his defensive theory.'" Id. at 172. The degree of harm, sufficiently
serious to be called "egregious," is present whenever a reviewing court finds the case for
conviction or punishment was actually made clearly and significantly more persuasive by
the error. Saunders v. State, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991). Egregious
harm is a difficult standard to prove and must be determined on a case-by-case basis. 
Ellison v. State, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002). The actual degree of harm
is determined in light of the entire charge, the state of the evidence, including the contested
issues and weight of probative evidence, the argument of counsel, and any other relevant
information revealed by the record of the trial as a whole. Almanza, 686 S.W.2d at 171.

 a. Harm Analysis

 i. Entire Charge

 In this case, the charge: (1) instructed the jury the indictment alleged for
enhancement purposes, that Huffmaster had previously been finally convicted of two
felonies-burglary of a habitation and burglary of a building; (2) stated the details of each
of these offenses (4); (3) told the jury Huffmaster had entered a plea of "True" to the
enhanced allegations alleged in the indictment and that the jury was instructed to find the
enhanced allegations were true; (4) told the jury the "punishment authorized for a second
degree felony, when enhanced by two prior felony convictions as alleged in the indictment
shall be punished by confinement in the Institutional Division of the Texas Department of
Criminal Justice for any term of not less than 25 years or not more than 99 years or for
Life"; and (5) instructed the jury as mandated by article 37.07, section 4(a) of the code of
criminal procedure. See Tex. Code Crim. Proc. Ann. art 37.07 § 4(a) (Vernon Supp.
2009).

 Here, Huffmaster is accused of the third-degree felony offense of escape. The
primary offense was enhanced with two paragraphs alleging two prior, sequential felony
convictions for the offenses of burglary of a building and burglary of a habitation. 
Accordingly, he was subject to sentencing as a "habitual offender" with a specified term of
confinement for life, or for any term of not more than ninety-nine years or less than twenty-five years' imprisonment. See Tex. Penal Code Ann. § 12.42(d) (Vernon Supp. 2009). (5) 
Even though the charge as well as the trial court while reading the charge instructed the
jury they had found Huffmaster guilty of second degree felony escape, the punishment
range for a second-degree felony, enhanced by two prior, sequential felony convictions,
is the same for a third-degree felony, enhanced by two prior, sequential felony convictions. 
See id. (stating that if it is shown at trial for felony offense that defendant has been
previously convicted of two felony offenses, punishment range is from 25 to 99 years or
life in prison). 



 


 ii. State of the Evidence and Contested Issues


 The evidence showed that Huffmaster, while under arrest for public intoxication, was
in the custody of Officer Flores, a Port Aransas police officer, at the Port Aransas jail
detention facility. During that time, he escaped from custody. Huffmaster testified that,
after seeing the officers struggle with the combative subject, he ran because he feared for
his life and because of anxiety. The jury sentenced Huffmaster to twenty-five years'
imprisonment, which is the minimum punishment allowed by section 12.42(d).

 iii. Arguments of Counsel

 During punishment-phase closing argument, the prosecutor explained (6) the
punishment range to the jury and that the State had the burden to prove Huffmaster had
been previously convicted of two felonies. In his punishment-phase closing argument,
defense counsel asked the jury to consider a punishment of twenty-five years.

 iv. Other Relevant Information

 The record does not reflect the jury was confused about the applicable burden of
proof or about the punishment range. 

 b. 
Application

 Based on our review, Huffmaster has not shown the court's failure to instruct the jury
he was convicted of third-degree felony escape rather than second-degree felony escape
affected the very basis of the case, deprived him of a valuable right, or vitally affected his
defensive theory. See Almanza, 686 S.W.2d at 172. The trial court instructed the jury on
the correct punishment range, and the jury assessed the minimum punishment within that
range. We hold Huffmaster did not suffer egregious harm. Issue two is overruled.

C. Admission of Extraneous-Offense Evidence


 In issue three, Huffmaster argues the trial court erred in admitting evidence of his
prior convictions to show motive and intent to escape. After the jury was impaneled and
sworn, but before either side presented opening statements, the prosecutor, outside the
jury's presence, asked the trial court for permission to address the issue of Huffmaster's
four prior felony convictions during the case-in-chief. The prosecutor told the trial court the
prior convictions showed Huffmaster's motive and intent to escape. Defense counsel
objected "to any mention of [Huffmaster's] prior record during opening statements or until
such time as we have a hearing outside the presence of the jury when the Court can rule
on it." The trial court did not rule on the objection; it recessed until the following morning. 
The next morning, the prosecutor argued that case law allowed the State to present
evidence of Huffmaster's prior felony convictions to show motive and intent to escape. 
Defense counsel argued that Texas Rules of Evidence 403 and 404(b) prevented
admission of the prior convictions because this evidence "is clearly more prejudicial than
probative before the Court." and "I don't think the priors are relevant to prove motive or
intent. After hearing the arguments, the trial court allowed the State to reference
Huffmaster's prior convictions.

 1. Standard of Review

 When considering a trial court's ruling on the admission of evidence, we "must
determine whether the trial court abused its discretion." Willover v. State, 70 S.W.3d 841,
845 (Tex. Crim. App. 2002). "We consider the ruling in light of what was before the trial
court at the time the ruling was made and uphold the trial court's judgment if it lies within
the zone of reasonable disagreement." Billodeau v. State, 277 S.W.3d 34, 39 (Tex. Crim.
App. 2009).

 2. Analysis

 a. Evidence of Prior Convictions

 The State did not introduce evidence with respect to Huffmaster's prior convictions
during its case-in-chief. Rather, during Huffmaster's direct examination, defense counsel
questioned him about his prior felony convictions. Thus, defense counsel opened the door
to this issue, allowing the prosecutor to cross-examine Huffmaster about these
convictions. (7) Under the doctrine of invited error, a defendant may not create error, whether
statutory or constitutional, and then submit that error as a basis for appellate relief. Polk
v. State, 170 S.W.3d 661, 665-66 (Tex. App.-Fort Worth 2005, pet. ref'd); see Druery v.
State, 225 S.W.3d 491, 505-06 (Tex. Crim. App. 2007) (holding that "law of invited error
estops a party from making an appellate error of an action it induced").



 b. Evidence of Parole

 During the State's opening argument at the guilt-innocence phase, the prosecutor
told the jury, in relevant part, "We believe the evidence is going to show you that he
[Huffmaster] had a motive to escape even on a little public intoxication charge. We believe
we are going to show you he has direct intent to escape from that facility because he's on
parole." Counsel did not object to this argument.

 During the State's case-in-chief, the prosecutor asked Officer Flores the following
questions:

 Q. [D]id you inventory the Defendant's property?


 A. Yes.


 Q. And did you find anything curious in his property?


 A. I did. I found a paper where he was on parole.


 Q. Okay. And during the course of your investigation, did you confirm he
was on parole?


 A. Yes.


 Q. And who did you contact to confirm that?


 A. I actually--it's on his CCH record, the one record that I was able to
see after. Then I realized this is why he was running. He was trying
to get away. And what kept going through my mind was if somebody
is on parole, they know they're going back. . . .


Counsel did not object to this testimony.

 Even if we construe defense counsel's objection to the admissibility of the prior
convictions to include any mention of parole, any error in the mentioning of parole in the
prosecutor's opening argument was cured. In Valle v. State, the court of criminal appeals
explained:

 To preserve error in admitting evidence, a party must make a proper
objection and get a ruling on that objection. In addition, a party must object
each time the inadmissible evidence is offered or obtain a running objection. 
An error in the admission of evidence is cured where the same evidence
comes in elsewhere without objection.


Valle v. State, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003) (footnotes omitted); see Leday
v. State, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (explaining that "[o]ur rule . . . is that
overruling an objection to evidence will not result in reversal when other such evidence was
received without objection, either before or after the complained-of ruling,"); Willis v. State,
785 S.W.2d 378, 383 (Tex. Crim. App. 1989) (noting that admission of inadmissible
evidence is rendered harmless if the same or similar evidence is introduced without
objection elsewhere during trial).

 Here, defense counsel did not obtain a running objection. Therefore, error, if any,
in the prosecutor's opening argument was cured because the same or similar evidence
came in elsewhere without objection. See Willis, 785 S.W.2d at 383. Issue three is
overruled.

III. Modification of Judgment


 An appellate court has the power to correct a trial court's written judgment if the
appellate court has the necessary information to do so. Cobb v. State, 95 S.W.3d 664,
668 (Tex. App.-Houston [1st Dist.] 2002, no pet.). This power does not depend upon a
party's calling the error to the court's attention or raising the issue on appeal. See French
v. State, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (adopting reasoning of Asberry v.
State, 813 S.W.2d 526, 531 (Tex. App.-Dallas 1991, pet. ref'd) (concluding that authority
to reform incorrect judgment "is not dependent upon a request by either party")).


 The written judgment recites that the underlying offense, escape, is a second-degree felony. However, Huffmaster was indicted for third-degree felony escape, and the
jury found him guilty of that offense. The State points out the judgment should be reformed
to show the conviction was a conviction for third-degree felony escape from a secure
correctional facility. We agree and therefore modify the judgment to show Huffmaster was
convicted of third-degree felony escape from a secure correctional facility.

IV. Conclusion


 The judgment of the trial court is modified and, as modified, we affirm the judgment. 

 

 ROSE VELA 

 Justice



Do not publish.

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and

filed this 28th day of May, 2009.
1. In Lawhorn, the court said the State is not required to prove, as an element of the offense of escape,
"the notions of flight thereafter and/or continued evasion of arrest." Lawhorn v. State, 898 S.W.2d 886, 890
(Tex. Crim. App. 1996). The court of criminal appeals has noted that escape is not a continuing offense. 
Fitzgerald v. State, 782 S.W.2d 876, 881 n.9 (Tex. Crim. App. 1990). In Fitzgerald, the defendant and another
inmate escaped from prison by cutting their way through a perimeter fence. Id. at 879. The court concluded
that the defendant "with his cohorts committed the felony offense of escape by moving beyond the bounds
of the Beto II Unit without authority, and his offense was complete at that point. . . ." Id. The "moment he
[defendant] was outside the confines of the penitentiary his escape was fait accompli." Id. (emphasis in
original).
2. "To preserve error in prosecutorial argument, a defendant must pursue to an adverse ruling his
objections to jury argument." Archie v. State, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). "The essential
requirement is a timely, specific request that the trial court refuses." Young v. State, 137 S.W.3d 65, 69 (Tex.
Crim. App. 2004). Even if the error was such that it could not be cured by an instruction to disregard, the
defendant must object and request a mistrial to preserve the error. Mathis v. State, 67 S.W.3d 918, 927 (Tex.
Crim. App. 2002).
3. The first sentence of the punishment charge read: "You have found the Defendant, TROY
HUFFMASTER, guilty of ESCAPE, a felony of the SECOND DEGREE."
4. Specifically, the charge gave the details of these offenses as follows:


 [T]he first previous felony being for BURGLARY OF A BUILDING, on MAY 10, 1994, in
Cause Number 92-7-4734, styled "The State of Texas vs. TROY EUGENE HUFFMASTER,"
in the 24th District Court of Jackson County, Texas, and the second previous conviction
being for BURGLARY OF A HABITATION, on OCTOBER 8, 1997, in Cause Number 97-5-16,912-A, styled "The State of Texas vs. TROY HUFFMASTER," in the 24th District Court
of Victoria County, Texas, and that the second previous conviction was for an offense that
occurred after the first previous conviction became final. 
5. Section 12.42(d) of the Texas Penal Code provides:


 Except as provided by Subsection (c)(2), if it is shown on the trial of a felony offense
other than a state jail felony punishable under Section 12.35(a) that the defendant has
previously been finally convicted of two felony offenses, and the second previous felony
conviction is for an offense that occurred subsequent to the first previous felony conviction
is for an offense that occurred subsequent to the first previous conviction having become
final, on conviction he shall be punished by imprisonment in the institutional division of the
Texas Department of Criminal Justice for life, or for any term of not more than 99 years or
less than 25 years.


Tex. Penal Code Ann. § 12.42(d) (Vernon Supp. 2009).
6. In relevant part, the prosecutor argued:


 I want to explain to you, . . . as to why now you have a minimum of 25 years to life to
consider, because I need you to understand that.


 One of the allegations that we would have to prove that cannot come to you until after you
find him guilty is that this Defendant had been previously convicted of two felony offenses,
which makes him what under Texas law is called a habitual felony offender. As a habitual
felony offender, the State is then required to prove two prior convictions. And what the Judge
has told you and what you heard was the Defendant plead true to those two prior convictions.


 [A] habitual felony offender in the state of Texas faces a minimum of 25 to 99 years or life,
which brings us to where we are. I didn't want you to feel misled. I didn't want you to feel
that all of a sudden we're in a new punishment range. This is an element we have to prove
to you during punishment, not during the case in chief but during punishment; and now this
is where the punishment range lies.
7. The prosecutor did not question Huffmaster about the details of these prior convictions.